J. BUTTS, *et al.*, Appellants, v. MONONA COUNTY, *et al.*

**Drainage:** POWERS OF COUNTY BOARD. The board of county supervisors, in a proceeding for the establishment of a public ditch, under Acts Twentieth General Assembly, chapter 186, has jurisdiction to establish such drainage within the territory and through such lands as it deems proper, to effect the object of reclaiming the swamp and overflowed lands in the locality to be drained.

ESTABLISHMENT: *Substantially similar surveys.* A tax levied to cover the expenses of building a drainage ditch is not invalid because a change was made in the survey originally fixed upon by the supervisors, so that the survey, as accepted, did not occupy the line of the original, if it appears that the two surveys corresponded in length, and were on, substantially, the same line.

EVIDENCE TO SHOW REJECTION OF PETITION. The fact that the county supervisors rejected that portion of a petition made under Acts Twentieth General Assembly, chapter 186, which sought the issuance of bonds for payment of costs of drainage, does not show that they also rejected that portion of the petition which sought the establishment of the drain, or abandoned the proceedings to establish.

*To show sufficient petition.* The finding of the board of supervisors that a petition for the construction of a public ditch, had been signed by one hundred legal voters of the county, involving a finding that all the requirements of the law had been fully complied with, and the evidence furnished by the fact that the petition bears the names of more than one hundred persons, is not overcome by the testimony of a witness that, in his opinion, there were one or two less than one hundred legal voters on the petition.

CONSTITUTIONAL LAW. The unconstitutionality of Acts Twentieth General Assembly, chapter 186, "as originally enacted," providing for the establishment of ditches to reclaim lands, because of the failure to give a right of appeal from the order levying the tax, is not available in an action to enjoin the collection of taxes levied

to pay for the construction of such a ditch, where the tax was not
le ied until after the right to appeal had been given by subse-
quent legislation, although the proceedings for the establishment
of the ditch were had before.

*Appeal from Monona District Court.*—HON. GEORGE W.
WAKEFIELD, Judge.

WEDNESDAY, DECEMBER 9, 1896.

THIS is a suit in equity to enjoin and restrain the
collection of certain taxes levied upon the property of
the plaintiffs to pay for the construction of a ditch.
There was a decree dismissing the petition, and the
plaintiffs appeal.—*Affirmed.*

*S. H. Cochran* for appellants.

*Wright, Hubbard & Bevington* and *McMillan &
Kindall* for appellees.

ROTHROCK, C. J.—I. The plaintiffs seek to enjoin
the collection of the tax in controversy upon several
grounds set forth in the petition. Some of the defects
complained of pertain to the jurisdiction of the board
of supervisors to levy the tax. It is also charged that
the orders made by the board originated and were
carried out by fraud, and that the tax was levied for
private gain, and not in the interest of the tax payers,
and that the ditch for which the tax was levied is of
no benefit to the lands of the plaintiffs.

The proceedings for the construction of the ditch
were had under chapter 186 of the Acts of the Twen-
tieth General Assembly. As it will be necessary to
refer to that act further on in this opinion, we will
here set out that part of it which appears to us
to be applicable to some of the questions pre-
sented by appellants. Section 2 of the act is in
these words: "Whenever the petition of one hundred

legal voters of the county, setting forth that any body or district of land in said county, described by metes and bounds, or otherwise, is subject to overflow, or too wet for cultivation: and that in the opinion of petitioners the public health, convenience or welfare, will be promoted by draining or leveeing the same, and also a bond, conditioned as required by section 1208 of the Code, shall be filed with the county auditor, he shall appoint a competent engineer or commissioner, who shall proceed to examine said district of lands, and if he deem it advisable, to survey and locate such ditches, drains, levees, embankments and changes in the direction of water-courses as may be necessary for the reclamation of such lands or any part thereof, and he shall make substantially the same report, and the same proceedings shall be had as now provided by law for the location and construction of ditches, drains, and changes in water-courses, and two or more counties may unite in such work of reclamation in the manner now provided by law." Section 3 is as follows: "If the board of supervisors shall be of the opinion that the estimated cost of reclamation of such district of lands is greater than should be levied and collected in a single year from the lands benefited, they may determine what proportion of the same should be levied and collected in each year, and they may issue drainage bonds of the county, bearing not more than eight per cent. annual interest, and payable in the proportion and at the times when such taxes so apportioned will have been collected, and may devote the same at par to the payment of such work as it progresses, or may sell the same at not less than par, and devote the proceeds to such payment; and should the cost of such work exceed the estimate, a new apportionment of taxes may be made, and other bonds issued and used in like manner; but in no case shall any such bonds run longer than fifteen years, and at least ten per cent.

in amount of those issued on the first estimate shall be payable annually. The board of supervisors may divide the land to be benefited into drainage districts, which shall be accurately described and numbered, and such drainage bonds shall be in sums of not less than fifty dollars ($50.00) each, and shall be numbered consecutively and issued as other county bonds are, and shall specify that they are drainage bonds, and designate by its number the drainage district on account of which they are issued. And in no case shall the amount of bonds issued exceed fifty per cent of the value of the lands in such drainage districts, as shown by the last assessment for taxation."

A petition, purporting to be signed by one hundred and fifteen legal voters of Monona county, was filed in the auditor's office on the fifth day of April, 1886. The following is a copy of the body of the petition: "To the Honorable Board of Supervisors of Monona County, Iowa: The undersigned respectfully represent that they are citizens and legal voters of said county; that all, or nearly all, of that part of Kennebec, Belvidere, and Sioux townships lying west of the Little Sioux river, and also a large portion of the east part of Franklin and Sherman townships, and of that portion of the east part of Ashton township west of the west fork, are subject to overflow, and too wet for cultivation; and that the public health, convenience, and welfare will, in the opinion of your petitioners, be promoted by draining, leveeing, and reclaiming the same. They therefore ask that a commissioner be appointed, as provided by law, to examine said district of land; locate such drains and other works as may be necessary and advisable for the reclamation of the same, or any part thereof; report accurately the boundaries of the district of lands to be reclaimed by the proposed works, and the lands benefited,

and such other matters as are deemed important or
required by law. And your petitioners pray that, on
the coming in of said report, such works of drainage
and reclamation of said district of lands as are found
necessary, or advisable, may be ordered; that the
bonds of the drainage district may be issued to pay
for the same, and the time for the payment of such
bonds may be extended over as long a time as the law
permits; and your petitioners will ever pray," etc.
On the next day after the petition was filed, the
county auditor appointed one Holbrook commis-
sioner, as required by section 2 of the act above cited.
The commission issued to Holbrook named the town-
ships, and parts of townships, as they were designated
in the petition, and directed him to examine the local-
ity, and to "locate such ditches, drains, levees, and
embankments through said lands, and make such
changes in the direction of water courses, as may be
necessary for the reclamation of such lands," and to
return a plat and profile of such survey to the
auditor's office. The commissioner secured the
services of a civil engineer named Wattles, and
commenced the survey. A report was filed by the
commissioner June 7, 1887. And afterwards, on the
eighteenth day of June, 1888, what was denominated
a "supplemental report" was filed, by which changes
in the location of the ditch were recommended. This
last report was approved, and the following record
was made by the board of supervisors on the fifth day
of September, 1888: "In the matter of the ditch
known as the 'Wattles Ditch,' it appearing to the sat-
isfaction of the board that all the requirements of the
law had been fully complied with, and all parties
thereto entitled having been served with due notice of
the same, on motion, be it resolved, that said ditch
or ditches be, and the same are hereby, declared estab-
lished as recommended by the commissioner thereon,

in his report filed June 18, 1888, excepting the lateral ditch, or cut-off, on the east side of the Sioux river, in section 4, township 82, range 44, known as the 'Brown Cut-Off'; and the auditor is hereby ordered to procure and keep a drainage record, and record the papers in this case therein." Afterwards such proceedings were had that the lands thought to be benefited by the ditch so located were classified, and an equitable apportionment of the cost of the work was made, as provided by section 1214 of the Code; and the levy of the tax was made on the second day of October, 1889, and the auditor was directed by the board of supervisors to "carry the assessments of the benefits on the tax list for the year 1889."

This action was commenced on the twenty-ninth day of September, 1892, nearly three years after the tax was levied. It is said that the petition for a commission and survey did not contain the names of one hundred legal voters of the county, as required by the statute above quoted. The names of one hundred and fifteen persons and firms were signed to the petition. Among these there are the names of four women. So far as the face of the petition shows, it was signed by one hundred and eleven men. Some evidence was introduced upon the question, and it is claimed in behalf of appellants that it appears by a preponderance of the evidence that the petition was not signed by one hundred legal voters. We do not believe that the position of counsel for appellants is well taken. It is true, one witness gave his opinion that there were one or two less than one hundred; but he designated no names, and his statement ought not to be regarded as evidence which would outweigh the finding of the board and the petition itself.

II. The main question, and that in which counsel for appellants appears to have the utmost confidence,

is that the original petition was rejected by the board of supervisors, and that they thereby lost jurisdiction of the subject-matter, and that the board had no power or authority thereafter to take further action. This position of counsel is not sustained by the record of the board of supervisors. The only action taken by the board was to.refuse to author.ize the issuance of bonds to pay for ditching. This appears from the following proceedings, had on August 2, 1886: "On motion, the question of bonding the county for ditching purposes, was taken up; and, on motion that the county be not bonded for such purposes, Supervisors Riddle and Cron voted 'Aye,' and Supervisor McCaskey voted 'No.'" No action was taken by the board, to the effect that a proposition for some kind of a ditch to drain the territory named in the petition was rejected. It is urged that the petitioners so understood it, and the record is incumbered with testimony of witnesses to that effect. We cannot take the time or space to discuss such a question. No line of ditches was designated in the petition, neither as to length, breadth, depth, or location. That question was to be determined by the board upon the report of the commissioner. That part of the petition which asked that bonds be issued was rejected; and we think it is fair to say that not one of the petitioners had at any time any reason to believe that the matter of drainage asked for in the petition was at any time abandoned. It is true that some time elapsed before such a survey and location of the ditch was presented to the board, as met its approval. We have set out sufficient of the proceedings to show that the petition was pending from the time it was filed until the final order was made establishing the ditch.

III. The ditch was designated in the records as the "Wattles Ditch." This name was given to it

because the engineer who made the first survey was a man named "Wattles." It is contended that the tax is void, because the last survey was made by another engineer, and the ditch is not located on the same line as the survey made by Wattles. The evidence shows that, so far as the two surveys corresponded in length, they were on substantially the same line. But this is not a matter of any consequence. It is a plain proposition, that ought not to be controverted, that the board had jurisdiction to establish such drainage within the territory, and through such land as it deemed proper to effect the object of reclaiming the swamp and overflowed lands in the locality to be drained.

IV. It is claimed that the ditch laws of the state were unconstitutional when this proceeding was had, on the ground that there was then no right to appeal from the order levying the tax. A right of appeal was given. The proceeding as we have said, was commenced by the filing of the petition, on the fifth day of April, 1886; and, when the tax was levied, the plaintiff had the right of appeal. This question was determined by this court in *Yeomans v. Riddle*, 84 Iowa, 147 (50 N. W. Rep. 886).

V. The charges of fraud in procuring the ditch to be made and the tax to be levied, and that the contract was let for a sum largely in excess of the true value of the work, are not supported by the evidence. Other questions discussed in argument are not of sufficient importance to demand special consideration.

We have determined this case upon the questions as presented by counsel for appellants. It must not be understood that we hold that many of the objections urged to the validity of the tax, if well taken, in point of fact, are available to appellants in a suit in equity, to enjoin the collection of a tax, commenced

nearly three years after the tax was levied. We are satisfied from an examination of the whole record that the decree is right, and it is AFFIRMED.