SMITH *v.* CARLOW.

1. DRAINS—VALIDITY OF PROCEEDINGS—NOTICE.
   Personal service upon a land owner is not essential to the validity of drain proceedings, where notice has been given by publication in accordance with the statute.

2. SAME—ESTOPPEL.
   One who stands by and permits a drain to be constructed without taking any steps to test the validity of the proceedings is estopped to question them when called upon to pay for the improvement.

3. SAME—SUFFICIENCY OF PETITION—SURPLUSAGE.
   Where a petition for a drain was signed by the citizens of two counties, and a township in another county was mentioned in the petition, but no freeholders of that county signed it, and the proposed drain did not run through any part of it, the inclusion of the name of the commissioner of such county in the petition did not invalidate the proceeding.

4. SAME—LETTING OF CONTRACT—DIRECTORY PROVISIONS.
   The provision of the drain law (3 How. Stat. § 1740*d*8) that, after the drain is located, the commissioner shall "proceed to divide the route thereof into convenient sections for the letting of the work," is directory merely, and does not require a division into sections where such method of construction would entail a great increase in cost.

5. SAME—MATTERS WITHIN DISCRETION OF COMMISSIONER.
   The judgment of a court cannot be substituted for that of the drain commissioner with respect to the extent to which a stream should be deepened and widened to constitute a drain for the adjoining lands.

6. SAME—CONSTITUTIONALITY OF LAW.
   The constitutionality of the drain law is reaffirmed.

7. SAME—BENEFITS—COLLATERAL ATTACK.
   In an action to recover a drain tax paid under protest, plaintiff cannot show that his land was so remote that it was not benefited by the drain.

Error to Lapeer; Smith, J.    Submitted June 18, 1897. Decided July 16, 1897.

| | |
|---|---|
| 114 | 67 |
| 114 | 329 |
| 114 | 67 |
| 115 | 6 |
| 115 | 203 |
| 114 | 67 |
| 123 | 291 |
| 114 | 67 |
| 124 | 286 |
| 114 | 67 |
| s72NW | 22 |
| 130 | 5386 |
| 114 | 67 |
| 134 | 404n |
| 114 | 67 |
| 137 | 569 |
| 114 | 67 |
| e146 6 | 50 |
| 114 | 67 |
| 150 3 | 34 |
| 150 | 128 |
| 114 | 67 |
| 152 | 1263 |

*Assumpsit* by Nathaniel Smith against Lyman A. Carlow, treasurer of Imlay township, to recover taxes paid under protest. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Reversed.

This case is no stranger to the courts. It involves the validity of the proceedings to construct what is known as the "North Branch of Mill Creek Drain," situated in the counties of St. Clair and Lapeer, which drain is several miles in length. No proceedings were taken to contest the validity of this drain until it was nearly completed, at an expense of upwards of $30,000. An assessment district had been made by the commissioners, and the tax levied. At a session of the supervisors of the county of Lapeer held October 17, 1895, the board adopted a resolution refusing to apportion the tax upon the several townships interested. Thereupon Mr. Snyder, the drain commissioner for the county of Lapeer, presented a petition to the circuit court for that county asking for the writ of *mandamus* to compel the supervisors to reconvene and apportion the tax. The petition set forth the proceedings for the establishment of the drain, and alleged their validity. The board of supervisors made a long answer, alleging the invalidity of the proceedings, and for the same reasons now presented. An issue was framed, proofs were taken, and on November 20, 1895, the circuit court entered an order adjudging and determining that the complaint of said relator was "as appears of record," and ordering the supervisors to reconvene and apportion the tax. The writ of *certiorari* was issued by this court to review this order. On December 17, 1895, the writ was dismissed by this court. No written opinion was filed, but it appears from the motion that one of the principal reasons was that, after the order of the circuit court, the board had reconvened, and complied therewith. After this action the supervisors of the townships refused to spread the taxes upon the township rolls, and the drain commissioner appealed to this court to compel the appro-

priate action on their part.  On December 9, 1896, this court made an order directing said supervisors to spread these taxes upon their assessment rolls.  Thereupon the plaintiff in this case paid his tax, $8.68, under protest, and brought this suit to recover the money so paid.

*Geer, Williams & Halpin* and *Chadwick & McIlwain*, for appellant.

*Atkinson & Wolcott*, for appellee.

GRANT, J. (*after stating the facts*).  1. The point was raised in the court below that the question was *res judicata*.  This question is not raised in this court by counsel, perhaps for the reason that an adjudication upon the entire controversy is desired.  Speaking for myself, I am unable to see why the question is not *res judicata*. I have examined the papers in the *certiorari* case, and, as above stated, the proceeding was attacked upon every ground now raised.  The order of the court shows that it passed upon the validity of the proceedings.  Inasmuch, however, as this point is not raised, we will proceed to the other questions.

2. Every notice which the statute requires was given during the progress of these proceedings.  No appeal was taken as provided in the drain law, and no attempt made to review them by the writ of *certiorari*.  It is true that this plaintiff testified that he was not aware for a long time that his land was included in the assessment district, and that he did not suppose that it could be benefited by the construction of the proposed drain.  The statute required no personal service upon him, and, when the statutory notices have been given by publication, no personal service is necessary.  Among the reasons for the delay stated in the plaintiff's brief are these: "The time required to examine the voluminous proceedings; the necessary co-operation of a large number of interested parties, the expense being far too great to be borne by a single individual; and the mistaken and ineffectual appeal to the

board of supervisors." From this it appears that many taxpayers have combined in the prosecution of this suit to contest the validity of the proceeding. This drain is now constructed. All parties to the proceeding acted in good faith. There is no evidence of fraud. The entire proceedings were open and notorious, and evidently were known to most, if not all, whose lands were affected. The courts were open to them to contest its validity before the contractors had performed the work under their contract. The commissioners decided that it was a public necessity. Whatever advantage it is to the public has been reaped. It is just that the contractors be paid, and courts should compel payment unless some insurmountable obstacle stands in the way. We think this case comes clearly within many other decisions of this court which hold that when parties stand by and see such improvements made, and take no steps to impeach their validity, they are estopped to question their validity when called upon to pay for them.

3. We will, however, dispose of some of the objections to the proceeding upon which the court held the tax invalid, and directed a verdict for the plaintiff. The petition was signed by some 50 citizens of Lapeer and St. Clair counties. The township of Maple Valley, in Sanilac county, was mentioned in the petition. No freeholders of that county signed the petition. The proposed drain did not run through any part of Sanilac county. The drain commissioner of St. Clair county, to whom the petition was directed, conceiving it to be his duty, notified the drain commissioner of Sanilac county to meet with the commissioners of the other counties. The commissioner of Sanilac county did not appear, and for the reason above stated his name was, therefore, dropped from the proceedings. The inclusion of the drain commissioner of Sanilac county in the petition was mere surplusage, and did not tend to invalidate the proceedings.

4. It is urged that the proceeding is void because the construction of the drain was let as an entirety, and not

in sections.   Section 1, chap. 4, of the drain law (3 How. Stat. § 1740d8), provides that, after the drain is located, the commissioner shall "proceed to divide the route thereof into convenient sections for the letting of the work, and shall mark the grade on each stake, from stake to stake, along the whole length of such drain.   He shall also mark on each stake the number of each section." Section 1740e requires a preference to be given in letting the contracts to those bidders who are assessed a tax for benefits.   It is established by the evidence that the construction of this drain could not be let in sections without great increase in the cost.   The nature of the land bordering the stream was such that the excavation could not well be done in any other manner than by a dredge.   Undoubtedly, the object of this statute was to give those interested, and who had to pay for the construction, an opportunity to bid.   We think this statute was directory merely; otherwise a drain only a few rods in length must be divided into sections.   It was clearly for the benefit of all that it should be let as a whole.   Our statute provides: "Every word importing the singular number only may extend to and embrace the plural number, and every word importing the plural number may be applied and limited to the singular number."   1 How. Stat. § 2, subd. 2.   The term "convenient sections" includes the right to let in one section at the discretion of the commissioner. Sedg. Stat. & Const. Law, 368.   The taxpayer is not injured by this proceeding, and the injustice of permitting him to take advantage of such an objection after the construction of the drain is apparent.

5. It is next urged that the drain law does not contemplate works of the magnitude and extent of this drain. Under this law it is contended that this is an internal improvement, prohibited by the Constitution; that this stream is a navigable stream, and cannot be so deepened and widened as to bring it within the drain law.   Some 15 years or more ago logs were driven down this stream by the use of dams.   Plaintiff's own witnesses testified that

logs could not be run down it in ordinary weather. The law fixes no limit to the width or depth of the drain, nor to what extent a stream may be deepened and widened so as to drain the adjoining land. This determination is left entirely to the commissioner, and courts cannot substitute their judgment for that of the commissioner. *Sage* v. *Laurain*, 19 Mich. 137. This was not a navigable stream. *East Branch, etc., Imp. Co.* v. *White, etc., Lumber Co.*, 69 Mich. 207.

, 6. Plaintiff's counsel urge that the law is unconstitutional. It is unnecessary to argue this point. It was settled in *Gillett* v. *McLaughlin*, 69 Mich. 547.

7. Plaintiff introduced evidence tending to show that his land was so remote that it was not benefited by the drain. That question could not be raised in a collateral proceeding. The statute provides a way for reviewing the action of the commissioner in this regard, and this action is final. 3 How. Stat. §§ 1740*d*8, 1740*e*2; *Brown* v. *City of Grand Rapids*, 83 Mich. 101; *Township of Caledonia* v. *Rose*, 94 Mich. 216; *Nelson* v. *City of Saginaw*, 106 Mich. 659.

Some other questions are raised, but the above are the most important, and we deem it unnecessary to discuss the others. We find that the proceedings were regular, and that the tax was valid. It follows that the judgment must be reversed, and, inasmuch as the facts are conceded, judgment will be entered in this court for the defendant, with the costs of both courts.

LONG, C. J., MONTGOMERY and HOOKER, JJ., concurred. MOORE, J., did not sit.