ADDISON OLIVER *et al*, Appellants, v. MONONA COUNTY, *et al*.   ADDISON OLIVER, Appellant, v. MONONA COUNTY. ADDISON OLIVER, Appellant, v. MITCHELL VINCENT.

Drainage Law:   CONSTITUTIONALITY.   The drainage law, providing for the establishment of ditches to drain land, and directing

| | |
|---|---|
| 117 | 43 |
| o122 | 98 |
| 117 | 43 |
| 128 | 430 |
| 128 | 440 |
| 128 | 455 |
| 117 | 43 |
| h132 | 52 |
| 117 | 43 |
| 137 | 90 |
| 137 | 113 |
| 137 | 664 |
| 117 | 43 |
| 140 | 361 |

the payment of the expenses by assessments upon all the land located in the drainage district, is not unconstitutional, for failure to provide for the giving of a notice to the landowner of such assessment; the law providing for a notice upon the hearing determining the boundaries of the drainage districts.

SAME.   The drainage law is not invalid for permitting the levying an assessment on land which is not benefited by the improvement, where the land is located in the drainage district; the theory of the law being that the drainage will promote the public health and welfare, and not merely render the lands of particular owners more valuable.

INCLUSION IN DRAINAGE DISTRICT: *Review on appeal.*   Since a landowner may raise the question whether his land is properly included in a drainage district at the time of the creation of the district, he cannot, on appeal from the action of the board of supervisors in assessing his land for a portion of the expenses for the drainage, impeach the correctness of the determination that his land was correctly included in the drainage district.

STATUTES: *Consideration of benefits.*   Though at the time of proceedings to establish a ditch to drain a tract of land, and to create the boundaries of the drainage district, McClain's Code, section 1852, allowed a landowner, in resisting an assessment on his land for a portion of the expenses of constructing the ditch, to prove that the land so assessed was not benefited by the location of the ditch, Code 1897, section 1947, omitting such provision, and expressly providing that it shall not be competent to show that the lands assessed were not benefited by the improvement, is applicable, and prohibits a landowner, on an appeal from the action of the board of supervisors in assessing his land, from showing that the land was not benefited; the right to do so being a mere privilege, which might be lawfully withdrawn at any time.

AWARD OF DAMAGES: *Injunction to restrain construction of ditch.*   A landowner who made a claim for damages for the construction of a drainage ditch through his land, which claim was allowed, cannot enjoin the construction of such ditch; it not appearing that the damages he will suffer are substantially different from those for which allowance was made.

Drainage Petition: FINDING OF BOARD OF SUPERVISORS: *Collateral attack.*   The determination of the board of supervisors that a petition presented under Code, section 1952, providing for a petition of 100 legal voters of a county for the drainage

of lands therein, was signed by 100 legal voters of the county, so as to authorize the board to order the drainage, may be reviewed by appeal or certiorari, but cannot be attacked collaterally.

COLLATERAL ATTACK: *Notice of proceedings to locate ditch.* A notice, in proceedings to locate a ditch for drainage, which advised a landowner affected that the commissioner appointed to locate the ditch, substantially described, had reported in favor of the location, and that all objections thereto must be filed before a certain day, or that action would be had and the ditch located without reference thereto, though not in the language suggested by Code, section 1940, providing the form of such notice, was not so defective as to constitute no notice and therefore the decision of the board. of supervisors that it was a sufficient notice cannot be attacked collaterally.

*Estoppel to attack notice.* An owner of land, who was a petitioner for the construction of a drain, is estopped from asserting that the notice served on him of the hearing of the petition before the board of supervisors was insufficient.

SAME: *Award of damages before locating ditch.* The failure of a board of supervisors, in proceedings to establish a ditch for the drainage of a tract of land, to award and pay the damages to the property through which the ditch was to pass, before locating it, is not jurisdictional, and cannot be made the basis of a collateral attack.

SUFFICIENCY OF FINDING. The order of the board of supervisors establishing a ditch to drain lands pursuant to a petition which recited that ''all the requirements of the law have been fully complied with, and that the ditch be declared established,'' involved a sufficient finding that the ditch was necessary, within Code, section 1941, providing that if the board find ''such improvement conducive to public health,'' etc., they shall locate the same

*Appeal from Monona District Court.*—HON. WM. HUTCHINSON, Judge.

FRIDAY, MAY 16, 1902.

THESE three cases were tried together in the lower court. In the first, Oliver and others seek to enjoin further work in constructing a ditch under authority of

the board of supervisors of defendant county, and to cancel and enjoin the collection of assessments on the property of plaintiffs for the construction of said ditch. The second case is an appeal by Oliver to the district court from the action of the board of supervisors in assessing on his land a portion of the expense of constructing said ditch. In the third case Oliver alone seeks to enjoin the contractor from constructing said ditch through his land. The court rendered a decree and judgment denying any relief to plaintiffs, and they appeal.—*Affirmed.*

*George A. Oliver* and *Ira T. Martin* for appellants.

*W. L. Smith, County Attorney,* and *Wright, Call & Hubbard* for appellees.

McCLAIN, J.—The proceedings of the supervisors of Monona county in locating the ditch in question, which is named the "Wattles Ditch,"—the original survey therefor having been made by Wattles, as engineer, under the authority of the commissioner appointed by the county auditor to locate the ditch,—were instituted in 1886, under section 2, of chapter 186, of the Acts of the Twentieth General Assembly (McClain's Code, section 1865), by the filing with the county auditor of a petition purporting to be signed by more than 100 persons, including plaintiff Oliver, describing themselves as citizens and legal voters of said county, representing that certain lands in said county, described by their general location, were subject to overflow, and too wet for cultivation, and that the public health, convenience, and welfare would be promoted by draining, leveeing, and reclaiming the same, and asking that a commissioner be appointed to examine said district of land, locate such drains and other works as might be necessary and advisable for the reclamation of the same, or any part thereof, and report accurately the

boundaries of the district of lands to be reclaimed by the
proposed works, and land benefited, and that, on the coming
in of such report, the works of drainage and reclamation of
said district of lands, as the same should be found neces-
sary or advisable, be ordered.   The auditor, on the filing
of this petition, appointed a commissioner, who made a
report, showing by a plat the commencement, course,
and termination of the proposed ditch as recommended
by him, and the subdivisions of land through which the
same should be constructed; and notice of this report was
served on a number of persons, including plantiff Oliver,
whose lands were included by description in the commis-
sioner's report and the notice.   In 1888 the board of super-
visors found that all the requirements of the law had been
fully complied with, and that all the parties had been
served with due notice of the same, and established the
Wattles ditch, as recommended in a report of the commis-
sioner subsequent to that referred to in the foregoing state-
ment.   Subsequently appraisers were appointed to classify
the lands benefited by the construction of the ditch, and
to make equitable apportionment of the expenses and cost
of construction among the lands so benefited.   The assess-
ments made by these commissioners were directed to be
entered upon the assessment books as against the lands de-
scribed, and it is the enforcement of these assessments
which, in the first case before us, is sought to be enjoined.

The validity of these taxes has already been before
this court in the case of *Butts v. Monona County*, 100 Iowa,
74, in which the plaintiff, who was also an owner of land
covered by the same assessment, sought to enjoin the
enforcement of these taxes as against his land, and the
action of the lower court in refusing to grant relief was af-
firmed.   Many of the questions argued in the case now
before us were presented in that case, but some of those
raised are now perhaps more fully presented, and other

objections to the tax are apparently now raised for the
first time.

Counsel for appellants insist that the original petition
was not sufficient to confer upon the board of supervisors
any jurisdiction to act, because it was not signed by 100
legal voters of the county, as required by the statute then
in force (McClain's Code, section 1865, now em-
bodied in Code, section 1952). It is not questioned
but that there are apparently more than 100 signers
to this petition, but evidence was presented in the
lower court tending to show that some of the sign-
ers were women; that others were not residents of the
county; that still others were persons of alien birth, who had
not been duly naturalized; and that still others, who were
residents and voters at the time of signing the petition,
had ceased to be residents of the county when the peti-
tion was presented to the auditor. On the other hand,
there was evidence tending to show that the petition,
which was badly worn and somewhat mutilated at the
time when it was offered in evidence, did not show all
the names which were attached to it at the time it was
filed with the auditor; several persons whose names were
not found thereon testifying that they had signed the pe-
tition as presented. We think the claim that the peti-
tion was not signed by a sufficient number of voters may
be disposed of without going into a consideration of this
conflicting evidence. It is, no doubt, true that, if the
petition did not purport to be signed by 100 persons claim-
ing to be voters of the county, the board of supervisors
would have acquired no jurisdiction to act, and that the
subsequent finding that the petition was sufficient would
not give the board jurisdiction; but it being conceded that
the petition was apparently sufficient, the determination
by the board, duly made of record, that it was in fact such
as the law required,—involving, as it did, an adjudication
as to whether 100 signers to the petition were voters of the

county,—was an adjudication of fact, which cannot be inquired into in collateral proceedings. These facts distinguished the case from that of *Richman v. Board*, 70 Iowa, 627. It is to be noticed that we have before us no direct attack on the correctness of the action of the board in determining the sufficiency of the petition. There was no appeal from that determination, nor was it questioned by certiorari. It seems to be now too well settled to admit of controversy that when an inferior tribunal, such as this was, is authorized to determine a question of fact, such as the competency of the signers to such a petition to sign the same, its finding is an adjudication which cannot be impeached collaterally. In *Commissioners v. Aspinwall*, 21 How. 539 (16 L. Ed. 208), the supreme court of the United States had before it a question as to the validity of bonds issued on a subscription for railroad stock made by the board of commissioners of a county, and which the board had authority to make only on the vote of a majority of the voters at an election at which the proposition should be submitted, and held that the determination of the question whether there was a majority vote in favor of the proposition was for the board of commissioners, and that their determination could not be collaterally assailed. In its opinion the court uses this language: "The right of the board to act in the execution of the authority is placed upon the fact that a majority of the votes had been cast in favor of the subscription, and to have acted without first ascertaining it would have been a clear failure of duty; and the ascertainment of the fact was necessarily left to the inquiry and judgment of the board itself, as no other tribunal was provided for the purpose." In *Ryan v. Varga*, 37 Iowa, 78, this court had before it a similar question, involving a determination as to whether township trustees lawfully submitted to vote the proposition to levy such tax, which could only be submitted on the pe-

tition of one-third of the resident taxpayers of the township, and in the opinion uses this language: "But if in fact the petition was not signed by one-third of the resident taxpayers of the township, nevertheless we hold that after the trustees have decided that it was signed by the required one-third, and have ordered the election, which has been held, the aid voted and tax levied pursuant to it, the validity of such tax cannot be assailed on the ground that the petition was not signed by the requisite number of taxpayers. That fact can be re-examined and again decided only upon an appeal, writ of error, certiorari, or other method provided for the direct review of the decision made by the trustees. The decision of that question by the trustees is judicial; and since the statute gives them express and undoubted jurisdiction to determine it, their judgment becomes, like every other judicial determination conclusive until reversed or set aside by a direct proceeding in the manner provided by law. It cannot be assailed indirectly or collaterally, as is sought to be done in this case." The same principle was applied in this court in *Bennett v. Hetherington*, 41 Iowa, 142, which was a case of similar character, and also in *Baker v. Board*, 40 Iowa, 226, in determining the question whether the sufficiency of the petition for removal of the county seat could be questioned in an injunction proceeding, the board of supervisors having determined that the petition presented was sufficient to authorize it to act. The same reasoning has been adopted with reference to the sufficiency of petitions in ditch proceedings, similar to the proceedings which we now have before us, in *Hume v. Association*, 72 Ind. 499, and *Marshall v. Gill*, 77 Ind. 402. In several of the cases to which we have referred, the question of the sufficiency of the petition was sought to be raised, as in this case, by a proceeding to enjoin the collection of a tax assessed in pursuance of the action of the board or other tribunal based thereon, and in each instance the principle was ap-

plied that the finding of the board was not subject to collateral impeachment. The view which we have taken disposes of the objections raised as to the sufficiency of the petition, and our conclusion is in harmony with that reached in *Butts v. Monona County, supra.*

The sufficiency of the notice to property owners that the petition would come before the board of supervisors for action is also questioned. But the suggestions made in reference to the sufficiency of the petition are also applicable here. There was a notice, duly served on Oliver, which advised him that the commissioner appointed to locate this ditch, which is substantially described, had reported in favor of the location, and that all objections thereto must be filed before a certain date, or that action would be had and the ditch located without reference thereto. This notice was not in the exact language suggested by the statute then in force (McClain's Code, section 1846, now Code, section 1940), but it cannot be said to be so defective as to constitute no notice, and therefore the action of the board of supervisors in holding it to be sufficient cannot be collaterally assailed. *Montgomery v. Watson,* 116 Ind. 343 (15 N. E. Rep. 795, 19 N. E. Rep. 184); *Hackett v. State,* 113 Ind. 532 (15 N. E. Rep. 799). Mere irregularities in the proceedings cannot be taken advantage of by way of collateral attack. *Studabaker v. Studabaker,* 152 Ind. 89 (51 N. E. Rep. 933). Moreover, Oliver, who is the only party to these proceedings who in his own name makes complaint of the sufficiency thereof, was one of the signers to the original petition, and also to the bond required by the section of the statute last above referred to, and we think he is in no position to complain because a more formal notice was not given. His own testimony shows that he was perfectly aware of all the proceedings which were being taken, and was deeply interested therein, and it certainly does not lie with him to object that the notice was defec-

tive. *Patterson v. Baumer*, 43 Iowa, 477; *Hackett v. State*, 113 Ind. 532 (15 N. E. Rep. 799); *Smith v. Carlow*, 114 Mich. 67 (72 N. W. Rep. 22); *Dakota County v. Cheney*, 22 Neb. 437 (35 N. W. Rep. 211).

In this connection another objection made in behalf of appellants may be briefly noticed. It is said that no finding was made by the board that the ditch was necessary, and that the same would conduce to the public health, convenience or welfare, as required by Mc-Clain's Code, section 1847, now Code, section 1941; but the petition stated that the public health, convenience, and welfare would be promoted by draining, leveeing, and reclaiming the land referred to; and the board, in its order establishing the ditch, recited that "all the requirements of the law have been fully complied with, and that the ditch be declared established." This finding necessarily involved a determination of the necessity of the establishment of the ditch. It is not required by the statute that such finding shall be made of record. The statute says that if the board finds the ditch to be necessary, and that it will be conducive to the public health, etc., then it shall proceed to locate and establish such ditch. The establishment of the ditch therefore involved the finding as to the propriety of it, and is conclusive on that point. See Code, section 4648. The case is distinguished from *Hull v. Baird*, 73 Iowa, 528, because the statute involved in that case required an express finding; and the same may be said of *State v. Board of Commissioners of Colfax County*, 51 Neb. 28 (70 N. W. Rep. 500).

Many other complaints as to the action of the board are made which need not be considered, in view of the fact that, as we think, the acts of omission or commission which are charged constituted mere irregularities, for which the proceedings of the board cannot be called in question in this collateral way. One of the omissions suggested is the failure of the board to have the damages to

the property through which the ditch was to pass appraised and paid or secured before locating the ditch. As a matter of fact, Oliver made a claim for damages on this ground, and a portion of the amount claimed was allowed. We cannot see that it is material to a determination of the validity of the proceedings to locate the ditch, and assess the cost on the property within the range of the benefits, whether the claim for damages was made and allowed before or after such location. In this respect we think the objection is not jurisdictional.

The constitutionality of the statutory provisions under which the board of supervisors proceeded to locate the ditch, and assess a portion of the cost thereof on appellant's property, is elaborately argued, and many objections are raised, but a brief consideration of the nature of the proceedings will show these objections to be unfounded. They may be reduced principally to two: First, that there was no provision for notice of the assessment; and, second that the property owner was not allowed to show that his land was not benefited by the improvement for which the assessment was made.

It would not be a simple matter to state in a succinct proposition any rule as to when a notice of assessment is, and when it is not, essential to due process of law. It must be conceded that, for the general expenses of the government, taxes may be levied and assessed without any notice whatever. On the other hand, it may be conceded that when the expense of a public improvement, such as the paving of a street, is to be collected by apportionment on abutting property, according to some rule depending on proximity, frontage, or the like, then the property owner must have notice of the proceeding in which the apportionment is made. The case before us, however, does not belong to either of these classes. The statute under which these proceedings were had provides for a determination by the board as to whether "any body or district of land

in said county, described by metes and bounds, or otherwise," is such that the public health, convenience, or welfare will be promoted by draining it.   In other words, it practically provides for the creation of a drainage district, and the assessment of the expenses upon all the property coming within the general benefit involved in the promotion of the public health, convenience, or welfare.   These provisions are analogous to those for the creation of a sewer district, and the assessment of the expenses of providing sewerage for the district on all the property within its boundaries (Code, section 794), except that, with reference to the assessment of the cost of ditches, it is provided that the parcels of land on which the assessment is to be made shall be classified, and the rate of assessment of each class determined in accordance with the benefit to that class of lands.   Code, section 1946.   It is to be noticed, however, that it is not the proximity of the parcels of land to any particular ditch, or the benefit to such parcels from the construction of that particular ditch, which is the basis of the assessment on each parcel, but that all the parcels of land within the body or district of land with reference to which the improvement is made are to be assessed uniformly for the expense, in accordance with their general character.   The question as to the determination of which the property owner is entitled to notice is whether his land is properly included within the body or district of land that is to be subject to general assessment for such improvement, and if he has a notice, and an opportunity to be heard on this question, that is all the notice to which he is entitled.   *Yeomans v. Riddle*, 84 Iowa, 147.   The appellants in this case had notice of the general boundaries of the drainage district to be created.   At least, they had notice that their lands were included therein; for while, to some extent, the designated boundaries may have been indefinite, there was no uncertainty with reference to the portion of the district in which their lands were situated.

They knew by formal notice that the district was being created, including their lands, within which improvements by way of ditches were proposed to be constructed, the expense of which was to be assessed upon their property; and we think they were bound to take notice of subsequent proceedings. A question similar to that before us was involved in *King v. City of Portland*, 38 Or. 402 (63 Pac. Rep. 2), and the court uses the following language: "The manner of notice or the specific period of time in the proceedings when he [the property owner] may be heard is not very material, so that reasonable opportunity is afforded before he has been deprived of his property, or the lien thereon is irrevocably fixed." And this language is quoted with approval by the supreme court of the United States in reviewing the same case on appeal. 184 U. S. 61 (22 Sup. Ct. Rep. 290), 46 L. Ed.—. See, also, *Voigt v. City of Detroit*, 184 U. S. 115 (22 Sup. Ct. Rep. 337), 46 L. Ed.—

The more serious contention, however, especially on behalf of Oliver, on his appeal from the assessment, is that some of his lands were not benefited by the system of ditches provided for, because the level of the land is such that the proposed ditches will not carry off the water therefrom. This contention, as it seems to us, involves a misconception of the purpose for which such ditches are authorized by the statute to be constructed. If the sole purpose of the ditch was to improve certain specified lands, for the direct pecuniary benefit of the owners thereof, then the whole statute would be unconstitutional; for the owner of one piece of property cannot be compelled to contribute to the expense of the improvement of another piece of property, nor can the land of one owner be taken for the purpose of furnishing an outlet for the drainage of the land of another. *Fleming v. Hull*, 73 Iowa, 598. The statutory provisions which are involved in this case are supported on the theory that the public health, convenience, and welfare are promoted

by the construction of the improvement,—not simply that the lands of particular owners are rendered more valuable. *Patterson v. Baumer*, 43 Iowa, 477. If the land in question was properly included in the drainage district, then the owner cannot urge, by way of objection to the assessments, that the particular ditch constructed did not directly add to the value of his land. As was said in *Chambliss v. Johnson*, 77 Iowa, 611: "Lands are benefited by improvements which drain swamps and overflowed lands in the vicinity. The means of access to the lands at all times is a material consideration in determining whether a given tract should be assessed, and the health and welfare of the public in the vicinity are proper subjects of inquiry in fixing the boundaries of the territory benefited by the improvement. Indeed we think that if the adjacent highlands, which were not at all affected by direct overflow, were benefited by the improvement of means of access by roads, and by the reclaiming of low wet lands in the vicinity, they might be assessed in the amount of their proper and just proportion of the cost of the improvement." If Oliver thought that his land was improperly included within the district proposed to be benefited by the contemplated improvements, he should have raised the question when the district was created. He cannot now, in proceedings which are wholly collateral, impeach the correctness of that original determination. Having assisted in the proceedings for the creation of such districts, with ample notice thereof, and having allowed the contemplated improvement to be contracted for, he cannot now say that his land is not benefited thereby, and escape payment of his proportion of the assessment. At the time the proceedings in question were instituted, there was a statutory provision expressly allowing the landowner, by way of resistence to the assessment on his land of a portion of the cost of constructing a ditch, "to prove that such lands so assessed were not benefited by the loca-

tion, construction or maintenance of such ditch." Mc-
Clain's Code, section 1852. In the adoption of the Code
of 1897, which took effect before the trial of these cases in
the lower. court, this provision was omitted, and it was ex-
pressly provided that on an appeal to the district court
from the order of the board of supervisors fixing an assess-
ment upon lands for such purpose "it shall not be competent
to show that the lands assessed were not benefited by the
improvement." Code, section 1947. As we have already
seen, the fact that any particular tract of land is not
directly benefited by the improvements does not render
the statute authorizing the assessment of a portion of the
expense upon such tract, if included within the general dis-
trict to be benefited, unconstitutional. Therefore the priv-
ilege of showing want of direct benefit, for the purpose of de-
feating the assessment, is not a constitutional right. It is a
privilege only, which may be taken away without affecting
the validity of the proceedings. This question need not
be further discussed, for it is expressly determined in *Al-
lerton v. Monona County*, 111 Iowa, 560, a case decided with
reference to the very assessment which is now called
in question.

The views above suggested render it unnecessary to
refer at length to the elaborate argument of appellant's
counsel that an assessment for local improvements, without
regard to the benefits derived therefrom, is invalid. We
need not go into a discussion of the front-foot rule, involved
in the reference to *Village of Norwood v. Baker*, 172 U. S.
269 (19 Sup. Ct. Rep. 187, 43 L. Ed. 443). The fact that
plaintiff's lands were within the area of the benefits to re-
sult from this improvement was, as we have said, deter-
mined by the board of supervisors, and its determination
cannot now be questioned. It certainly does not appear
that these general benefits, which were wholly different
from, and independent of, the specific benefit of having a
particular tract drained by a particular ditch, were not in

excess of the assessments made on appellant's property. We do not understand that it has ever been held by any court that a property owner, called on to pay assessments for the general public benefit, is allowed to show that the specific personal benefit which he derives from the subject-matter for which the tax is levied is not equal to the amount of the tax imposed on him for that object.

With reference to the action by Oliver to enjoin the construction of the ditch through his land, it is enough to say, without going into detail, that we find no ground shown for equitable relief. Oliver made a claim at the proper time for damages, and his claim was allowed. It does not appear that the damage which he will suffer is substantially different from that for which the allowance for damages was made. He did not appeal, as he might have done, from such allowance, and we do not think that he is in a position to ask that the construction of this work—a public improvement—be stopped because the damages thus allowed are not sufficient. *McLaughlin v. Sandusky*, 17 Neb. 110 (22 N. W. Rep. 241). Indeed, there is no substantial showing of their insufficiency. We reach the conclusion, therefore, that the decision of the lower court, denying relief in each of the cases before it, was correct, and it is AFFIRMED.

LADD, C. J. took no part.