(110 N. W. 81.)

---

J. K. ALSTAD, JOHN W. CECKA, JOSEPH CECKA, E. FINGARSON, MARTIN JOHNSTON, M. O. VONG, ERICK JOHNSON, TONNES EAG. HANS HALVORSON, OLE TRONSON, E. B. LILLIBERG, B. M. JOHNSON, T. L. FINNESETH, RANDI SMETTE, C. K. ALSTAD, GILBERT NELSON, IVER THOMPSON AS ADMINISTRATOR OF THE ESTATE OF MARY THOMPSON, DECEASED, EMMA THOE, IVER MOEN, E. J. TESLO, ADOLPH A. HALVORSON, B. BURRESON, THORMOD WEGGE, S. O. SALVERSON, ED OLSON AND ERICK DVERGSTEEN, O. P. PETERSON, EDWARD BRASETH, ASA SARGENT, KNUTE HALVORSON, K. O. RENSLAND, AND THE GORHAM LAND COMPANY, A CORPORATION, v. JOSEPH SIM, GEO. O. STOMNER AND MARTIN L. RUDE, MEMBERS OF THE BOARD OF COUNTY DRAIN COMMISSIONERS OF TRAILL COUNTY, N. D., AND A. O. ANDERSON, AS COUNTY TREASURER OF TRAILL COUNTY, N. D.

Opinion filed August 3, 1906.

**Drains — Court Will Not Enjoin Collection of Assessment for Irregularities Where Jurisdiction Is Lawful.**

1. A court of equity will not, after the drain is completed, enjoin the collection of assessments against lands benefited by a drain regularly established by legal authority, although the board proceeded irregularly in matters pertaining to the construction of the drain.

**Same — Jurisdiction Acquired by Regular Petition, Notice and Hearing.**

2. The jurisdiction to order the construction of a drain is acquired by filing with the board a petition of the requisite number of owners of land affected by the drain, and an order by the board establishing the drain, after a hearing on such petition has been had upon due notice to all concerned.

**Same — Determination of Commissioners Conclusive.**

3. The determination of the board of drain commissioners that lands are benefited by a drain is conclusive, except in case of fraud

**Same — Irregularities No Ground for Injunction — Laches.**

4. Irregularities of drain commissioners in letting contracts for doing the work or furnishing materials for a drain are not grounds for a permanent injunction against the collection of the assessments of benefits on account of such drain, when not applied for until the drain is entirely completed.

**Same — Relief After Completion of Work — Notice of Work Being Done.**

5. Persons whose lands are assessed for benefits on account of a drain will not be heard in a court of equity, when asking for a perpetual injunction against the collection of assessments against their land on account of benefits after the drain is completed; they having had notice of the fact that work was being done on the drain pursuant to proceedings authorized by the drainage board.

**Same.**

6. Various irregularities considered, and *held* not to show ground for an injunction after the drain is completed.

Appeal from District Court, Traill county; *Burke*, J.

Action by J. K. Alstad and others against Joseph Sim and others. Judgment for defendants, and plaintiffs appeal.

Affirmed.

*John Carmody* and *P. G. Swenson,* for appellants.

The Board of Drain Commissioners is an inferior tribunal of limited jurisdiction, possessing only powers conferred by statute. Witte v. Curtis, 56 N. W. 475; Kemp v. Adams, 73 N. E. 590; Rutherford v. Maynes, 97 Pa. St. 78.

An assessment pursuant to unauthorized proceedings is void. Morrie v. Merrel, 62 N. W. 865; Kemp v. Adams, supra; Kenyon v. Board of Supervisors, 101 N. W. 851; Whitney v. Village of

Hudson, 37 N. W. 184; Fairbanks, Morse & Co. v. City of North Bend, 94 N. W. 537; Ricketson v. City of Milwaukee, 81 N. W. 864; Le Tourneau v. Hugo, 97 N. W. 115.

An assessment without notice is illegal and unauthorized. Curran v. Board of Com'rs, 50 N. W. 237; Twp. of Whiteford v. Probate Judge, 18 N. W. 593; Cook v. Covert, 39 N. W. 47; Dietz v. City of Neenah, 64 N. W. 299; Beebe v. Magoun, 97 N. W. 986; Picton v. Fargo, 88 N. W. 90.

Injunction is the proper remedy where property is threatened to be sold upon a void tax or assessment. Picton v. Fargo, supra; Dietz v. Neenah, supra; Power v. Larabee, 49 N. W. 724; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; Blaser v. Ashland, 61 N. W. 77.

*Theo. Kaldor,* State's Attorney, and *J. F. Selby,* for respondents

Where there is failure to employ writ of certiorari and delay until issue of warrant in payment of work done, and expenses of construction incurred, equitable relief will be denied. Moore et al. v. McIntyre Drain, 68 N. W. 130; Wood et al. v. Bangs et al., 1 Dak. 179.

Delay in seeking relief while proceedings are being had, and expenses incurred, waives equitable relief, 92 N. W. 841; Smith v. Carlow, 72 N. W. 22; Moore et al. v. McIntyre Drain, 68 N. W. 130.

MORGAN, C. J. On the 11th day of May, 1904, a petition for a drain, regular in form, was presented to the drainage board of Traill county for the establishment of a drain in said county. Subsequently the board acted upon said petition and regularly made an order establishing the drain as petitioned for. The ditch or drain thus duly established was two and a half miles in length and ran along section lines on which was a regular highway, and the drain was designated as "Alfred Munter Drain No. 6." Everything in connection with the establishment of this drain was regular, and nothing is urged against it that is claimed as a ground for declaring the proceedings void for want of jurisdiction on the part of the board to establish it. On July 19, 1904, at a regular session of the drainage board to consider matters concerning this drain, the board concluded to extend it westward to a given point, three and a half miles from the western terminus of the drain as first established. At this time there was no petition for such extension

before said board, and its action was of no validity whatever so far as the extension of said drain was concerned. The understanding of the board and of all concerned was that the extension was to be based on a new and separate petition by interested landowners adjoining the extension. Subsequently a petition regular in form was presented to the board, asking for the extension of said drain along section lines westward from the terminus of Alfred Munter drain No. 6. The board took no action on this petition until September 3d. On that day the board ordered that a notice of hearing on the petition for the extension of said drain be published and posted as provided by law, and September 19, 1904, was fixed in said notices as the day for the hearing. On the same day, September 3d, the board made an estimate of the cost of the construction of the drain, including the proposed extension. At this meeting an assessment of the benefits to accrue from said drain as extended was made, and such assessment of benefits to the several tracts of land was ordered published, and it was also ordered that a notice of the letting of the contract for the construction of said drain on September 19 at 1 o'clock p. m., be published and posted. and that a notice of review of said assessment at the same time be published and posted. On September 19th the board met and ordered that the petition for the extension of the drain as prayed for in the petition be granted; and, further, that the extension "be and the same is hereby established, and is attached to and forms a part of Alfred Munter drain No. 6, and shall be known and designated in the records by such name." At this meeting the contract for the construction of the drain and extension was made. The assessment of benefits was reviewed upon application to do so, and changes were made in the assessments. Very soon after this meeting the work on the construction of the drain was commenced, and the same was fully completed in November. The list of assessment of benefits to the several tracts of land, as changed by the board, on the review thereof, was filed with the county auditor as a corrected list, and the sum assessed by the board as benefits to each tract of land was extended by the auditor as a tax against the tract of land, and the tax roll with such assessment thereon was placed in the hands of the treasurer for collection with the general tax for that year. More than half, to wit, the sum of $3,541.04, of said assessment was paid before this action was tried. The sum of $3,262.96 is unpaid and is involved in this suit. The

drain was wholly completed on November 15, 1904. This suit for a permanent injunction, restraining the county treasurer from collecting any of the unpaid taxes assessed on account of the construction of said drain, was commenced on February 28, 1905. The plaintiffs, 32 in number, are landowners adjoining and in the immediate vicinity of said extension, and seek to restrain the collection of the drain assessments. It is uncontradicted that a majority of these plaintiffs had actual notice of the proceedings pertaining to the drain and were fully aware that work was being done on the drain. All of them would be presumed to have had such notice and knowledge from the circumstances surrounding them while the work was in progress. The trial court found that they had notice of the proceedings and knowledge that work was being done on the drain. No fraud is alleged or proven against the drainage board in reference to any of the proceedings. The trial court found in favor of the defendants and dismissed the action. Plaintiffs appeal from the judgment and demand a trial de novo of the entire case.

The plaintiffs claim that the facts warrant the intervention of a court of equity to restrain the collection of the assessments, upon the ground that the board of drainage commissioners acted without authority in the establishment of the extension of the drain and in all subsequent proceedings. The specific grounds urged against the legality of the proceedings are: (1) That the extension of the drain was established before a petition therefor was filed; (2) that the assessment of benefits to adjoining lands on account of said extension was made without estimates of cost, survey of the route, and filing of maps and profiles by the surveyor; (3) that no notice of the review of assesments for benefits was given as provided by law; (4) that no notice of the letting of contracts for the extension was given, and that the materials for the culverts were not bought under competitive bids. These objections may be disposed of by applying two legal principles: (1) Those applicable where the board is claimed to have acted wholly without jurisdiction in the establishment of the extension to the drain; (2) those applicable where the board is alleged to have acted irregularly and without compliance with statutory provisions relating to proceedings after the drain was established.

So far as the first objection is concerned, it may be stated that, if the board acquired no jurisdiction to establish the drain or the

extension thereto, all subsequent proceedings would be void and would not sustain an assessment of benefits or a tax based thereon. A total want of jurisdiction to initiate the proceedings could not be cured or waived, or the right to object to subsequent proceedings based on such absence of jurisdiction lost. There is a wide difference between a total absence of jurisdiction to establish a drain and noncompliance with statutory requirements as to matters to be done by the board thereafter in reference to the construction of the drain and assessment of benefits and letting of contracts. If there was no petition for the establishment of the extension, or the board did not act on such petition, and thereby establish the drain, then it acted without jurisdiction, and all its proceedings would be void. It is claimed that there was no petition by landowners for the establishment of the drain when the matter was before the board on July 19th. If the board ordered the establishment of the drain on July 19th, the contention would be true. But the record will not bear out the contention that the drain was established on that day. The minutes of the proceedings of the board for that day show that it was then agreed that the proposed drain be extended, and that it be done and considered under a separate petition. Nothing further was done in reference to the extension until September 3d. On that day the petition for the extension was before the board, and a notice of hearing on September 19th on the petition for the extension was ordered to be published and posted. It was also further ordered at that time that a notice of assesments and a notice of review of assessments on September 19th be published and posted. It was further determined that day what the estimated cost of the construction of the drain would be, and a notice was ordered given by publication and posting that a contract for the construction of the drain would be let on September 19th. When all these notices were ordered published and posted, the petition for the extension of the drain had not been acted upon formally. But on September 19th the board ordered that the extension to drain No. 6 as petitioned for be established and designated as "Alfred Munter Drain No. 6." It is therefor incorrect to assert that the extension to the original drain was not based upon a petition, and it is not true that it was established without a proper and regular petition regularly acted upon. The regularity of the preliminary proceedings to the original drain is not questioned, and could

not be questioned, as the drain was established by regular action of the board based upon a regular petition. The proceedings in regard to the establishment of the extension were equally as regular as those pertaining to the original drain. It is therefore beyond question that the drain and the extension had been regularly established on September 19th. The proceedings for the construc- tion of the drain and the extension were therefore based upon a regular petition, and a hearing was granted on these petitions, and the hearings were followed by orders regularly made that the drain and extension as petitioned for be established. The board therefore acquired jurisdiction to proceed with the construction. The filing of the petition gave the board jurisdiction. Erickson v. Cass Co. (N. D.) 92 N. W. 841. After the establishment of the drain, the proceedings were irregular in many ways, so far as the extension is concerned. There was no survey by the sur- veyor, and no maps or estimates were made by the surveyor. All these matters were regularly done upon the original drain. In regard to the extension the board simply directed the surveyor to set the necessary grade stakes along the route of the drain. prior to the commencement of the construction thereof, and to superintend the construction of the same. The surveyor's final report, after inspecting the drain as completed, was that the drain had been completed according to plans and specifications.

The omissions as to surveys did not render the proceedings void in this kind of an action. These plaintiffs generally had actual knowledge that the work was being done upon the drain, pursuant to proceedings before the board, and the others had knowledge of such facts from which notice would necessarily be implied. Notices were posted and published of all proceedings to be taken by the board which are now objected to and sought to be enjoined. If timely objections had been made before the board on these grounds and disregarded, equity would interfere by injunction enjoining further proceedings until all statutory requirements had been complied with. But courts will grant no relief in such actions when invoked solely to avoid payment of assessments which were levied in good faith and without objection from any source until after the work was completed. The plain- tiffs seek to enjoin the collection of the assessment, knowing that their lands will always receive the benefits derived from the drain. This action is a collateral attack upon the drain proceed-

ings. The work has all been done and the assessments extended upon the tax roll. Nothing further remains to be done by the board upon or in reference to the drain. There was no fraud in the proceedings. The board had jurisdiction to initiate the proceedings and to establish the drain. It is only as to irregularities and omissions that pertain to the exercise of the jurisdiction that the board lawfully acquired by regular proceedings that it is sought to invalidate the proceedings. The grounds for relief relate to errors or omissions in the exercise of jurisdiction regularly acquired. It is too late to invoke the powers of a court of equity when asked only as based on such irregularities and omissions and by collateral attack. In a similar case (Erickson v. Cass Co. 11 N. D. 494, 92 N. W. 841) the court said: "A court of equity will not extend its extraordinary remedy of injunction to prevent the collection of assessments for benefits imposed to pay the cost of constructing drains, when the parties seeking such relief have been actively or impliedly consenting parties to its construction and to the proceedings which led to the assessments, whether such assessments are legally valid or not." In that case the authorities are collected and reviewed. It is decisive of this appeal.

Failure to comply with the statute by requiring the surveyor to make plans, specifications, profiles and estimates of cost, is not ground for enjoining the collection of assessments after all the drain has been completed. These estimates and maps were filed in reference to the original drain. The petition for the extension accurately described the route of the drain and what lands it would pass through. The drain was extended along and was a part of a section line highway, and the drain was to be constructed by a ditcher. These matters rendered the filing of plans and specifications and profiles and estimates by the surveyor of little consequence when the same had been done as to the original drain.

We have read the cases cited by the appellants to support their contentions. The cases do not apply under the facts of this case. In the cited cases, injunctions were sought while the proceedings were pending and before any work was done on the proposed improvement. In other words, the complainants in those cases were not guilty of laches. In addition to the Erickson Case cited above, see, also, Turnquist v. Cass Co. 11 N. D. 514, 92 N. W. 852, and cases cited; Moore v. McIntyre, Drain Com'r (Mich.)

68 N. W. 130; Smith v. Carlow (Mich.) 72 N. W. 22; Patterson v. Baumer, 43 Iowa, 477.

It is claimed that the board made no finding that the extension was a necessity. The petition recited that the chief purpose of said extension was the drainage of agricultural lands, and that the same was a public necessity. The board gave a hearing on said petition, and after such hearing the petition was granted and the drain established as prayed for in the petition. The statute does not require that the board make a record that a necessity existed for such drain or extension. The order establishing the extension necessarily implies that it was deemed a matter of public necessity. Oliver v. Monona Co. (Iowa) 90 N. W. 510; Simonton v. Hays, 88 Ind. 70.

Complaint is made that no proper notice was given of the time and place where a review of the assessments for benefits would be allowed. The published notice of assessment for benefits against each tract of land benefited did not state the time when or place where the assessments would be reviewed. The assessments of benefits were headed, "Notice of Assessments and Review of Assessment." If the time and place of the review had been inserted. no objection could be raised to the form of the notice. The list as published showed that lands along the extension had been assessed for benefits. The notice of the letting of contracts for the construction of the drain was drawn up, published, and posted at the same time as the notice of assessments. In the notice that contracts would be let on September 19th for the construction of Alfred Munter drain No. 6, it was stated: "At said meeting the assessment of benefits on account of said drain will be subject to review." In a notice given on September 3d, it was stated that on September 19, 1904, at 10 o'clock a. m., the board would be in session for the purpose of considering all matters connected with said drain, "and especially to hear and determine any objections you may have to the same." We are satisfied that it cannot be said, in view of the foregoing notices, that there was no notice of the time and place where a review of the assessments was to take place. In one notice it was expressly stated that the review would take place on September 19th at 1 o'clock p. m. It is true that this notice technically referred to the original drain, but it referred to a review of the assessments of the Alfred Munter drain No. 6. That was the name that the entire drain was known

by. In the other notice it was stated in a general way that all matters pertaining to the extension would come up for consideration. This is very general; but, in view of the fact that the statutes prescribe that notice of review of assessments shall be incorporated in the notice of letting of contracts, we think the two notices read together are a substantial compliance with the statute in reference to giving notice of review. Section 1828, Rev. Codes 1905.

It is claimed that assessments were made against land not benefited by the drain. The action of the commisisoners is not subject to review on the question as to what lands are benefited. On that question the action of the board is conclusive, except when acting fraudulently. Erickson v. Cass Co. supra; State ex rel. v. Fisk (N. D.) 107 N. W. 191. It is claimed that the board did not let the contract to the lowest bidder as to furnishing materials for the culverts. The objection is that the board furnished the materials by purchasing them from a local lumber company upon prices to be submitted. This was irregular, and not in compliance with the statute (section 1829, Rev. Codes 1905). It is not, however, a ground for equitable interference after the materials have been furnished and the work completed. General notice was given that contracts would be let on September 19th. The minutes show that the board decided at said time to purchase the materials themselves from a certain firm upon "prices submitted and on file." The plaintiff should have objected to that manner of supplying the materials, and not delayed until the materials were purchased, used, and paid for. There is no pretense that there was fraud or any overcharge in the purchase of the materials. There are other matters urged against the regularity of the board's proceedings after the drains were ordered established, after regular petitions had been filed. They refer entirely to irregularities, and not to anything done or omitted that pertained to the original jurisdiction of the board over the drain. They pertain to technical deviations from the provisions of the statute as to the duties of the board to file the lists of the assessment of benefits with the county auditor. It is too late to attack the proceedings for such irregularities after the work is completed. It is therefore immaterial whether the lists filed were filed at the proper time and contained the proper date or not.

It is also urged that the board did not secure a right of way over the land through which the extension ran before it was established. This is not a matter that can be raised by an attack in a collateral action (Erickson v. Cass Co. supra), and is not ground for perpetual injunction (section 1841, Rev. Codes 1905).

Our conclusion is that no grounds have been brought forward warranting the granting of a permanent injunction.

The judgment is affirmed. All concur.

YOUNG, J. (concurring). I concur in the result above announced and in the statement of the legal principles which are applied. But I do not wish to give apparent assent to the view that there is any authority of law for the establishment of an extension of a drain as such, and as a part of the original drain, by a separate petition of those interested in the extension. The only authority for extending a drain is that given by section 1447, Rev. Codes 1899, and relates entirely to the lowering of the outlet. All other additions must be treated as original drains. In my opinion the so-called extension involved in this case was a new drain. The board had authority to act, however, for a regular petition was presented, and this petition was the basis of the subsequent proceedings. The board had power to locate and construct it as a new and independent drain, but did not have the power to consolidate the new with the original drain. They should have been kept separate. The board certainly proceeded irregularly. But it is not claimed that the assessments imposed upon the plaintiffs are in excess of the amount which would have been justly charged against them, had the board in its proceedings treated the so-called extension as an independent drain. There is no ground for equitable interference.