NORTHERN PACIFIC RAILWAY COMPANY, Appellant, v. SARGENT COUNTY, Respondent.

(174 N. W. 811.)

**Drains — intercounty drains and ditches — special assessment for construction of same — powers of drain commissioners.**

1. In an action to determine adverse claims, which seeks to test the validity of a lien existing by virtue of a special assessment made in the construction of an intercounty drain, where, from the proceedings had, it appears that the drain commissioners of the defendant county, upon an original petition for an intracounty drain, first made an order establishing such drain, and, thereafter, pursuant to proceedings had in co-operation with other counties for the establishment of an intercounty drain for three counties, abandoned such order and proceedings had thereon, and made a new order, upon such original petition, establishing a drain as a part of the intercounty drainage project, it is *held*, under §§ 1836 and 1841, N. D. Rev. Codes 1905, Comp. Laws 1913, §§ 2479, 2485, that the drain commissioners of the defendant county had jurisdiction so to do.

**Drains — intercounty drains — validity of special assessment for construction — attack on special assessment for drainage purposes — laches.**

2. Where such action to determine adverse claims has been instituted evidently for the sole purpose of determining the validity of the special tax assessed, and where the record unmistakably shows that the railway company, possessing actual knowledge of the drain, during its construction, availing itself of its benefits, and being actually benefited thereby, has neither offered proof of what its assessment should equitably have been, nor tendered payment therefor, and where, further, such railway company has been guilty of laches, apparent in the record, in instituting and maintaining such action extending

over a period of over six years, equity will not assist in setting aside the assessment where the drain commissioners had jurisdiction to establish the drain.

**Drains — assessment on railroad right of way.**

3. Following Northern P. R. Co. v. Richland County, 28 N. D. 172, it is *held* that a special assessment for a local drain upon a railway right of way, if benefited, is not violative of the 14th Amendment, or the commerce clause of the Federal Constitution.

Opinion filed June 26, 1919. Rehearing denied September 8, 1919.

Action to determine adverse claims involving a special assessment for the construction of an intercounty drain.

Appeal from judgment of District Court, Sargent County, *Allen, J.*, entered for the defendant for $3,189.70 and interest.

Affirmed.

*Watson, Young, & Conmy* and *A. G. Divet,* for appellant.

"The petition prescribed the extent of their power, and everything beyond that was without authority of law and void. The assent of the owner for this improvement was never obtained. No petition was ever made for it and no power given to the board to make it." Watkins v. Griffith (Ark.) 27 S. W. 234; People v. Drake, 23 N. Y. Supp. 264; Waples v. Waukegan (Ill.) 53 N. E. 618; Page & Jones, § 1017 and notes 1–4; Gilman v. Milwaukee, 21 N. W. 640; Pennsylvania Co. v. Cole, 132 Fed. 668, and cases cited; Rector v. Board, 6 S. W. 519; Balfe v. Lammers, 10 N. E. 92; Coggeshall v. City, 41 N. W. 617, 42 N. W. 650.

"The proceeding in which the petition was filed having terminated by the board rejecting the report of the commissioners appointed in pursuance of the petition, the petition has no further force and could not be the foundation of a second proceeding." Vennum v. Milford (Ill.) 66 N. E. 1040; Clark v. Chicago (Ill.) 57 N. E. 15; Pacific Paving Co. v. Sullivan (Cal.) 70 Pac. 86; City Street Improv. Co. v. Babcock, 55 Pac. 762; Union Paving Co. v. McGovern, 60 Pac. 169.

Upon petition to establish and construct a definite improvement, a public board acquires no jurisdiction to construct a different improvement either of greater or less extent than that petitioned for. Jones & Page, § 800; App v. Stockton (N. J.) 39 Atl. 921; Hutchinson v. Omaha (Neb.) 72 N. W. 218; Watkins v. Griffith (Ark.) 27 S. W.

234; People v. Drake, 23 N. Y. Supp. 264; Waples v. Waukegan (Ill.) 53 N. E. 618; Gilman v. Milwaukee, 21 N. W. 640.

Also on joinder of two separate movements. Arnold v. Cambridge, 106 Mass. 352; Mayall v. St. Paul, 15 N. W. 170; Baker v. Ashland, 50 N. H. 27; Weckler v. Chicago, 61 Ill. 142.

"The law of sufficiency of the notice is whether it furnishes an effective opportunity to be heard and gives a reasonable notice thereof." Stewart v. Palmer, 74 N. Y. 183; Re Amsterdam, 126 N. Y. 158; Norfolk v. Young (Va.) 47 L.R.A. 574.

"The assessment roll must show the amount of the assessment with such certainty that the amount can be readily determined therefrom."

The principle has been applied to assessments omitting the dollar sign. Peoples v. S. F. Sav. Union, 31 Cal. 132; People v. Hastings, 34 Cal. 571; Chicago v. Walker, 24 Ill. 494; Etchinson v. Ditch Assn. 40 Ind. 408.

The court cannot speculate as to what error the board may have made. McChesney v. People (N. J.) 34 N. E. 432.

That lack of jurisdiction renders the whole proceeding void and beyond the operation of the doctrine of estoppel, we think, is established beyond all question. App v. Stockton (N. J.) 39 Atl. 921; Hutchinson v. Omaha, 72 N. W. 218; Watkins v. Griffith, 27 S. W. 234; People v. Drake, 23 N. Y. Supp. 264; Waples v. Waukegan (Ill.) 53 N. E. 618; Gilman v. Milwaukee (Wis.) 21 N. W. 640.

Knowledge of an agent is only imputed to the principal when the knowledge is of such matters as are within the scope of the agent's authority and then upon the theory that because within the scope of his agency he is presumed to have communicated it to his principal. 31 Cyc. 1587, note 40, 1590, note 41; Ætna Indemnity Co. v. Schroeder, 12 N. D. 110.

Fraud will vitiate an assessment. Erickson v. Cass County, 11 N. D. 507; Surnquist v. Drain Com. 11 N. D. 518; State v. Fisk, 15 N. D. 225; Hackney v. Elliott, 23 N. D. 373.

*S. A. Sweetman,* State's Attorney, and *Wolfe & Schneller,* for respondent.

The plaintiff must bring into court and tender the very assessments it attacks, before the court will entertain the suit. Farrington v. N.

E. Invt. Co. 1 N. D. 118; Schaffner v. Young, 10 N. D. 245; Soo R. Co. v. Dickey County, 11 N. D. 107.

"The right to pay and recover back is the remedy which precludes the right to injunction or other equitable relief." Dows v. Chicago, 11 Wall. 108, 20 L. ed. 65; Bismarck Water Supply Co. v. Barnes, 30 N. D. 555.

This suit is a collateral attack. Courts will not inquire into the correctness of their judgment in the assessments of benefits. Erickson v. Cass Co. 11 N. D. 494; Trunquist v. Drain Comrs. 11 N. D. 514; Hackney v. Elliott, 23 N. D. 373.

The statute involved,—the drainage laws,—authorizing or permitting the levying of special assessments against plaintiff's "property" for benefits to that property by a local improvement, violates the 14th Amendment to the United States Constitution. Pacific v. Richland County, 28 N. D. 172; Sioliah v. Carmack, 17 N. D. 393, affirmed in 222 U. S. 522; Erickson v. Cass County, 11 N. D. 494.

BRONSON, J. The appellant railway company has appealed from the judgment of the district court of Sargent county, entered December 22, 1916, adjudging a valid lien in favor of Sargent county for $3,189.70 and interest upon the railroad right of way of the appellant pursuant to a special assessment made for the construction of a tricounty drain in such county.

In January, 1909, the railway company instituted this action to determine adverse claims to its right of way. The defendant, in its answer, claims a lien upon such right of way, by virtue of the special assessment levied for the construction of the drain in question.

To this answer the railway company replied, setting up allegations to the effect that the proceedings in the establishment and construction of the drain and the assessment made therefor were illegal, null, and void.

Pursuant to the provisions of chap. 23, N. D. Codes 1905, Comp. Laws 1913, chap. 37, concerning drains, and chap. 97, Laws 1905, certain proceedings were initiated for the construction of a drainage ditch in the counties of Ransom, Richland, and Sargent. On July 27, 1905, a petition for a ditch in Sargent county was filed. Pursuant thereto, on October 17, 1905, an order was made by the drain commissioners

of that county establishing a ditch and changing somewhat the course of said ditch as outlined in the petition.

In Ransom county, a petition for a ditch beginning on the east bank of the Sheyenne was filed May 28, 1905,[1] and another petition for a ditch in such county was filed December 26, 1905, to start at the northwest corner of section 13.

Likewise, pursuant to a petition filed, the drain commissioners of Richland county on July 26, 1905, made an order establishing drain No. 6 therein. Each of these petitions so made was for ditches in each of the respective counties. On February 28, 1906, a meeting at Wyndmere of the drain commissioners of the respective counties was held. On March 15, 1906, these drain commissioners, in a joint meeting agreed to co-operate in the construction of a proposed drain. On March 30, 1906, at a joint meeting of these drain commissioners at Wahpeton it was agreed to co-operate in the construction of a ditch in such counties pursuant to chap. 97, Laws 1905, and that the steps already taken in the respective counties and the work already done would not operate to bar such co-operation, and that certain portion of the proceedings already had could be vacated for the purpose of beginning new proceedings. Between that time and August 27, 1906, various joint meetings were held by these drain commissioners to consider the construction of the proposed drainage ditch in the counties, the classification of the lands for assessment purposes, matters concerning the construction of such ditch involving the securing of a right of way along the ditch and across the appellant railway, and the assessment of benefits to be made against the railway company, as well as against the various townships and municipalities. At one of these meetings the road master of the appellant appeared and promised to put in culverts in the right of way. On August 27, 1906, a joint meeting of the drain commissioners was held at De Lamere. There a resolution was adopted reciting that the joint board has proceeded under § 1836, N. D. Codes 1905, Comp. Laws 1913, § 2479 (chap. 97, Laws 1905), to establish a tricounty drain to be known in Richland county as Drain No. 6, in Sargent county as Drain No. 1, and in Ransom county as Long Drain No. 1; that

---

[1] NOTE.—Appellant states that Ransom county petition for drain was filed May 28, 1906. Ex. "E," the copy before this court, the original not being here, shows the date May 28, 1905.

the proceedings theretofore taken were insufficient to confer jurisdiction, and that these original proceedings be abandoned.

That, furthermore, notice should be given under § 1841, N. D. Codes 1905, Comp. Laws 1913, § 2485, for the adjustment and settlement of the value of the services rendered, labor done, and money expended under the invalid attempt to establish such drain.

Accordingly on August 27, 1906, the joint drain commissioners made and issued a notice of hearing and letting of the contract for the construction of the tricounty drain designated as Long Drain No. 1 in Ransom county, Sargent-Richland Drain No. 1 in Sargent county, and Wyndmere and Sargent Drain No. 6 in Richland county. Therein notice was given of the abandonment of the original proceedings for the individual drains in Sargent and Richland counties and of the assessment dated October 17, 1905, made therefor. Such notice also recited the resolution of the joint board of drain commissioners concerning such abandonment. Such notice further stated, concerning the tricounty drain, the apportionment made to the counties, townships, cities, villages, and other corporations in the percentage of costs and in the percentage of benefits. It also stated that a hearing would be held on September 25, 1905, before the drain commissioners of Sargent county in De Lamere for the purpose of hearing objections or complaints; and, further, that on September 26, 1906, the contract would be let for the construction of the drain by the drain commissioners. This notice was signed by the drain commissioners of the respective counties.

On August 27, 1906, the drain commissioners of Sargent county made an order establishing the drain to be known as Tricounty Drain No. 1. This order was based on the petition for the location and establishment of a drain filed with such drain commissioners on July 27, 1905. The order changed somewhat the course of the drain and further provided that the same should be continuous of the Ransom county ditch, and should connect with the Richland county end of the tricounty drain.

On August 28, 1906, a committee of the joint drain commissioners apportioned the costs of the ditch among the respective counties in the following proportions: Ransom county—.5032; Sargent county—.2093; Richland county—.2875. Thereafter some fourteen or fifteen

43 N. D.—11.

meetings of these joint drain commissioners were held with reference to the construction of this tricounty drain and the assessments to be made therefor. The last meeting apparently being held on January 13, 1908, when one Cook appeared before the joint board and filed a protest against the assessment made to the appellant railway company. Pursuant to the actions of the joint drain commissioners, the drain commissioners of the defendant county adopted a so-termed percentage for the specific assessment to be made against the lands to be benefited by the drain in Sargent county, and thereupon made a specific assessment in money against the various lands involved including those of the appellant railway company herein. The only assessment involved in this case is that made against the appellant; the other assessments levied have been paid.

The appellant contends:

1. That there was no petition for a joint drain in Sargent county, and that the board in its action upon the improvements finally determined upon, acted as volunteer and without any petition.

2. That the Sargent county board in its final action establishing the drain in question in that county, so determined without any petition before it, either for an intracounty or an intercounty drain.

3. That a separate and distinct intracounty drain in Ransom county entered into the costs of the intercounty drain constructed, and that the joint drainage boards deliberately acted so as to make such distinct drain to be considered a part of the joint drain, for purposes of taxation.

4. That there was no order of necessity made for the improvement or any opportunity given for objection to the petition.

5. That there was no notice of review of assessments posted as required nor published or posted as required by law.

6. That no assessment of any property in Sargent county was ever made by anybody or a board.

7. That the joint board did not make an apportionment of the cost of the drain between the several counties.

8. That the drainage boards of the counties and the joint board of such counties acted in bad faith and in fraud of the rights of Sargent county landowners, and especially of the appellant, with the intention of inflicting an undue, unjust, and arbitrary assessment.

This tricounty drainage project has been before this court in the

cases of Hackney v. Elliott, 23 N. D. 373, 137 N. W. 433, and in Northern P. R. Co. v. Richland County, 28 N. D. 172, L.R.A.1915A, 129, 148 N. W. 545, Ann. Cas. 1916E, 574. In the former case the validity of the proceedings had in Richland county was upheld as against the attack of the plaintiff, asserting the invalidity of the same in an action to remove, as a cloud on his title, the lien of certain tax certificates issued upon the special assessment made. In the latter case, an action to determine adverse claims to its right of way brought by the appellant herein, this court held that the appellant's right of way, if actually benefited, was subject to assessment for the construction of the drain. In both of these cases the same attorney appears of record for the contesting party as appears herein for the appellant.

We do not deem it necessary to enter into an extended discussion concerning the record facts upon the points raised by the appellant herein, in view of certain controlling features that seriously impress this court in its determination of this appeal.

We are satisfied upon an examination of the entire record in this case, that the Sargent county drain commissioners had jurisdiction to order the establishment and construction of the drain described in its order dated August 27, 1906; that this order so made was based upon the petition for a drain theretofore filed with such drain commissioners in the month of July, 1905; that such drain commissioners had jurisdiction to make such order pursuant to § 1841, N. D. Codes 1905, Comp. Laws 1913, § 2485, and § 1836, N. D. Codes, 1905, Comp. Laws 1913, § 2479; Hackney v. Elliott, supra.

This question concerning the jurisdiction of the drain commissioners involves the consideration of the action taken by such commissioners with relation to the petition filed July 27, 1905. As stated before, the appellant contends that the drain commissioners abandoned the petition so filed, and that their action of August 27, 1906, was not, from the record, an action upon such petition, and, if it were or should be so construed, the drain commissioners had no jurisdiction to make an order for an intercounty drain upon a petition for an intracounty drain, which was to form a part or portion of a joint drain to be constructed by the co-operation of three counties. The record discloses that the drain commissioners did abandon the proceedings that

they took upon such petition under their first order, establishing a drain dated October 17, 1905. We do not construe the action taken by the joint drain commissioners, or by the drain commissioners of the defendant county, to mean or to have been intended to mean that they abandoned the right to proceed upon the petition as filed under the law. In fact the subsequent proceedings disclose that they did proceed upon such petition as filed. The appellant contends, however, concerning the question of jurisdiction, in effect, that the drain commissioners could not establish an intercounty drainage project based upon a petition for an intracounty drain. If the drain in question had been constructed just as it is as an intracounty drain, there ought to be no question that the drain commissioners had both the power and the jurisdiction so to do under law then existing. N. D. Codes 1905, §§ 1821 and 1841, Comp. Laws 1913, §§ 2464, 2485. The law which permits drain commissioners of two or more counties to co-operate in the construction of an intercounty drain does not destroy the unity of action by the drain commissioners of one county when proceeding with relation to that portion of the project situated in such county. The co-operation is joint, but the action of each of the counties concerned is the individual action of such county. Hackney v. Elliott, 23 N. D. 373, 392, 137 N. W. 433. Therefore, as far as the question of jurisdiction and power is concerned, we are satisfied that the drain commissioners of Sargent county did possess jurisdiction.

Although there is much merit to many of the contentions raised by the appellant herein concerning the irregularities of the proceedings of the drainage board, we are nevertheless satisfied from the entire record that the appellant herein is not in a position in this action to take advantage of the irregularities in the proceedings concerning which it has entered complaint.

This action was commenced by service of process on January 22, 1909. It was not brought to trial until the 19th day of October, 1915, after a lapse of over six years. The action is the equitable action to determine adverse claims. The appellant in such action prays that the court through equity determine the defendant to have no lien or encumbrance upon its property. In this action the only party named as defendant is the defendant, Sargent county. Manifestly this action was instituted for the sole purpose of determining the legality and

validity of the proceedings had in Sargent county in the construction of the drain in question. Manifestly, the gist of the action was and is to determine the legality of this special tax. The proceedings looking toward the construction of this ditch began in 1905. In 1906 the road master of the appellant railroad appeared before the drainage board and promised to put in culverts in the course of the construction of the drain in question. In 1907 this drain was constructed in Sargent county; for 2 miles it runs parallel to the railway tracks of the appellant, just north of its tracks, and within 200 feet of the center thereof. A spur ditch emptying into this ditch parallels at an equal distance therefrom, the right of way for another mile. During the construction the railway company through its employees opened up its right of way for this drain to pass through and across such right of way. In January, 1908, the railway company appeared before the joint drain board to protest against the assessment made. Since the construction of the ditch some ditches from the railroad right of way into the big ditch, so constructed, have been dug. The record amply sustains the finding of the trial court that the appellant had actual knowledge of, and has been benefited by, the construction of such drain. In the record the appellant stipulates on its own side, that the tax department of the railway company had no actual notice of the assessment until 1907, after the assessment was levied. This is an admission that it did have notice in 1907. The record discloses no action of any kind taken by the appellant to question this assessment, or the amount of it, excepting the action involved herein. Already all special taxes assessed for the construction of this ditch in Sargent county have been paid excepting those assessed against the railway company. Outside of the voluminous exhibits introduced, the record in this case is not long. No evidence is introduced on behalf of the appellant to show what its assessment should equitably have been. In the record the appellant complains and seeks to elicit evidence that the assessment was so made by men who were not experienced railroad men and who were not acquainted with valuations or benefits that might accrue to railroad property, and yet no attempt is made to show to the trial court what its assessment justly ought to have been through its own experts which it produced at the trial. The appellant, seeking equity, must be subject to equity. Upon plain principles of estoppel

and laches, the appellant's action herein and its contentions in regard thereto cannot be sustained.

The equitable action to determine adverse claims cannot be used for the sole purpose of determining the validity or invalidity of a special assessment, where the record unmistakably shows that the plaintiff, possessing actual knowledge of the construction of the drain, and actually benefited thereby, has been guilty of laches both before and after the institution of the action extending over a period of time exceeding six years, and where, furthermore, the plaintiff has not offered to the court any proof of what its assessment equitably should have been, and has not made any tender to the court to pay for the actual benefits it has received. Under such circumstances, equity will not aid him, where the jurisdiction of the drain commissioners to act is established. Hackney v. Elliott, 23 N. D. 373, 137 N. W. 433; Alstad v. Sim, 15 N. D. 629, 109 N. W. 66; Douglas v. Fargo, 13 N. D. 467, 101 N. W. 919; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; Bismarck Water Supply Co. v. Barnes, 30 N. D. 555, L.R.A.1916A, 965, 153 N. W. 454.

The appellant also raises the contention in this appeal that the railroad right of way cannot be assessed in any event for the construction of this drain, because such action is violative of the 14th Amendment and the commerce clause of the Federal Constitution. This matter was decided in the case of Northern P. R. Co. v. Richland County, 28 N. D. 172, L.R.A.1915A, 129, 148 N. W. 545; Ann. Cas. 1916E, 574. We reaffirm the holding in that case on this question.

The appellant further contends that in any event the judgment should be reversed and the case remanded to the district court, with directions to vacate all proceedings of the drain board commencing with the apportionment of August 27, 1906. Equity will in no manner aid the appellant so to do. The appellant, with actual knowledge of the construction of this drain, having received actual benefit therefrom for years, having permitted over twelve years to elapse since the assessment was made without making any offer to pay any amount whatsoever as its just contribution for benefits received, is in no position to request or seek such equitable consideration.

The judgment of the trial court is affirmed, with costs to the respondent.

CHRISTIANSON, Ch. J. (dissenting). I dissent. It is undisputed that the petition presented to the drain commissioners of Sargent county prayed for the establishment of a drain wholly within that county. It is also undisputed that it was the purpose of the petitioners to petition for the establishment of an intracounty drain only, and that a drain extending into other counties was not within their contemplation. The drain commissioners of Sargent county on October 17, 1905, made an order establishing the drain as petitioned for, except that the starting point was located a half mile further south and a half mile further west. Such starting point was half a mile from the Ransom county line, and precluded the possibility of connection with a Ransom county drain. In fact it is not contended that the drain as petitioned for or established was intended to carry waters from Ransom county lands; and the record clearly shows that the Sargent county drain commissioners did not intend such drain to connect with or be a part of a drain into Ransom county. In March, 1906, however, the Sargent county drain commissioners met jointly with the drain commissioners of Richland and Ransom counties, and an arrangement was made among the three boards for the construction of a joint drain. Some work was done and expense incurred under this arrangement, but on August 27, 1906, the drain commissioners adopted the following resolution: "Whereas in the proceedings leading up to the original establishment of said drain *it has been found by the commissioners aforesaid that the original petitions for the establishment of such drain in the counties of Sargent and Ransom were insufficient in law to confer jurisdiction upon said commissioners;* and, whereas, new proceedings have been commenced and are being carried forward for the establishment of said drain along substantially the same route . . .; and, whereas, in the judgment of said drain commission it is necessary that all proceedings under the original invalid proceedings be abandoned, vacated, and set aside; now, therefore, be it resolved that all proceedings had for the establishment of said drain prior to and which culminated in the assessment levied upon the lands to be benefited by the said drain on the 17th of October, 1905, *be and the same are voluntarily abandoned."* After having adopted such resolution, the drain commissioners issued a written notice over their signatures to the effect "that all proceedings under the original attempt to establish and construct the said tricounty

drain . . . have been by the said boards of drain commissioners voluntarily abandoned because of jurisdictional defects in such proceedings." It is true that the board of drain commissioners of Sargent county subsequently made an order establishing what they designated Tricounty Drain No. 1. It is conceded, however, that no new petition was filed asking for such drain, and that the only basis for the order establishing it was the petition filed July 27, 1905, which petition had been characterized by the drain commissioners in their resolution (quoted above) as being "insufficient in law to confer jurisdiction upon said commissioners." It is not denied that Tricounty Drain No. 1 is wider, and that its construction required greater expense, than the drain contemplated by the signers of the petition. The extra width became necessary by reason of the extension of the drain into Ransom county.

In view of all these facts can it be said that there was any petition before the drain commissioners of Sargent county for the establishment of the so-called Tricounty Drain,—the drain involved in this action? I think not. Of course if they had no petition, they had no jurisdiction. And where there is no jurisdiction there can be no estoppel against assailing the validity of the proceedings. See Hamilton, Special Assessments, § 726. The fact that the railway company knew the drain was being constructed merely conveyed notice of this fact, and it had the right to believe that the drain commissioners would proceed in the manner provided by law, and in such manner only, and that its property would be assessed only for such share of the cost of the improvement as was legally chargeable against it. It has been held that even the signer of a petition for the construction of an improvement is not estopped to assail the validity of the proceedings, where the officers to whom the petition is addressed have not acted in accordance with law. It has been said that in such case "there is no presumption that by asking for the improvement he desired it done other than according to law, or that he intended to bind his property for more than his share of a legal assessment." Hamilton, Special Assessments, § 725. Of course if the property of the plaintiff has been benefited by the improvement, it should pay its just share of the cost of the improvement, not exceeding the amount of such benefits. But inasmuch as the drain commissioners had no jurisdiction, their assessment against the

plaintiff's property fails, and it is entitled to have the amount of such assessment determined in the manner provided by law.

ROBINSON, J. (dissenting). The plaintiff owns the railway bed, the right of way, a strip of land 100 feet wide on the northern boundary of sections 10, 11, and 12, in township 132 of range 53. It is just 30 miles due west of the city of Wahpeton, on the railway from Wahpeton to Oakes. In 1906 and 1907, under statutory proceedings for the construction of a tricounty drain, against said roadbed, special benefits exceeding $1,000 a mile were assessed against the strip of land in each section. From a judgment confirming the same, with interest and costs, the plaintiff appeals.

Council for plaintiff contends that from the beginning to the end there was no compliance with the statute; that the special assessment is grossly excessive, and that is true.

The drain is about one half in Ransom county and the other half in Sargent and Richland counties. The drainage board estimated the entire cost of the drain at $60,000, and apportioned the share of cost to each county in decimal figures thus: Ransom county, .5032; Sargent county, .2093; Richland county, .2875.

The apportionment seems to be entirely fair, and it is of no consequence that in Ransom county the drain consists of two parts, one running northerly and the other southerly. In Sargent county the total length of the drain is 4½ miles. In Richland county it is 5 miles. While the total cost of construction in the three counties was estimated at $60,000, by some means, possibly by the charge of excessive fees, it amounted to $72,000. In this, as in all drainage cases, a large portion of the cost is for commissioners' fees. Thus in lump sums we find these charges: December 2, 1905, Commissioner Blake, services, $64.-30; March 1, 1906, Commissioner Blake, services, $21; March 1, 1906, K. N. Myhre, services, $76.20; March 30, 1906, D. E. Blake, services, $14.75; March 30, 1906, K. N. Myhre, services, $25.70; October 5, 1906, K. N. Myhre, services, $60.45; October 5, 1906, D. E. Blake, services, $58.90.

In the Cass County Drainage Case, 11 N. D. 494, 92 N. W. 841, the total cost of the drain was $42,000, and the commissioners' fees and expense about $15,000.

On the books it appears that on August 27, 1906, a certain sum was

charged against each tract of land on the estimate of the total cost. Then on June 1, 1907, and before the drain was completed, about 10 per cent was added to the original sum charged. Then the board made a list of the lands, with the amount charged against each tract, and to the same annexed a warrant to the county auditor. It required him to extend on the tax list for the year 1907 the amount set opposite to the description of each tract of land. That was done under § 1831, Statutes of 1905, as amended in 1907. Of course the amounts were extended as per the decree of the commissioners, acting as judges in their own case, and allowing themselves large lump sums, and this was done without any pretense of notice or a hearing. Upon the legality of such proceedings several decisions have been made by the supreme court of this state without due consideration.

The case of Erickson v. Cass County, 11 N. D. 498, 92 N. W. 841, is a blind leader of the blind. Holding the procedure conclusive, the court said: "It is well settled that where provision is made 'for notice to and hearing of each proprietor at some stage of the proceedings upon the question of what proportion of the taxes shall be assessed upon his land, there is no taking of his property without due process of law.'" Now that is not true and the cases cited do not sustain it. The mere proportion of expense, graft, and loot that may be charged is of less consequence than the amount. The cases cited do merely sustain a special assessment on regular proceedings, when the owner has a chance to appeal from the amount or when the amount is confirmed by a court, after due notice. However, in *this case it is not seriously contended that there was a compliance with the requirements of the statute. There was neither a proper petition for the drain,* nor a *legal notice of the apportionment of the benefits and the letting of contracts.* Nevertheless, it is a fact that the drain was a necessity, and it was fairly well constructed, and it does serve a good purpose, and it is of special benefit to the roadbed and roadway of the plaintiff. And though the *plaintiff has not had legal notice, there was no lack of actual notice.* Each day while the drain was being constructed opposite to its roadbed, the plaintiff's trains were run back and forth within 200 feet of the construction.

Now, regarding the review of special assessments in such cases, whatever may have been the previous rulings, it is now clearly made

the *duty of the court to review the levy and assessment and to determine the just amount of the special benefits*. Act March 14, 1919. That is the only question here presented. The evidence on this point is not all that it should be, because the parties relied too *much on technical points*. However, there is some evidence, and it is probably better for both parties to end the litigation than to remand the case for additional testimony.

It does appear that each mile strip contains only 12½ acres, and the assessment charged against the 12½ acres is the same as that charged against any 640 acres of adjacent land. For ten years, commencing with 1906, the average assessed valuation of the *roadway from Wahpeton to Oakes was $500* a mile, and it is certain that at the time of the construction of the drain and at all times since then the real value of the roadway in question—the average value in said years—did not exceed $1,000 a mile, or $80 an acre. And we may well take official notice of the way in which railroads are constructed and the fact that such construction through the low land in question did much to drain it. The roadbed was made by throwing the earth onto the center from each side of the road, and thereby making a ditch on each side. In arguing counsel say that in the big drain the waters run east at the rate of 4 miles an hour. If that is true, then the two railway ditches must have carried off a large flow of water which drained into Elk creek.

From the testimony of Commissioner Blake it appears that in making the special assessment the commissioners considered not only the actual benefits to the roadway and roadbed of the company, but also the indirect *benefits likely to result from improvements in the country, giving the company more freight to haul*. As the assessment is grossly excessive and out of all proportion to the assessments on other properties, it must be that it was made on some wrong basis of remote or speculative benefits. Though it is certain that the drain has been a real and substantial benefit to the roadway and roadbed yet and of course, there is no possible way of determining the real benefits, and it would still be a matter of conjecture and opinion though we *should hear the testimony of a thousand witnesses*. Bearing this in mind and all the facts and circumstances, we conclude that the real and special benefit is approximately $300 a mile, or $900 for the 3 miles, and that plaintiff should pay the same, with interest at the

legal rate from March 1, 1908, and that neither party should recover any costs on this action, because neither party has prevailed and each party has made a large amount of needless cost. Hence, judgment should be that the special assessment be reduced to $900 on the roadway in said three sections, and that defendant do have and recover from the plaintiff the sum of $900, with interest from March 1, 1908.

As there was no compliance with the law, so as to give the drainage commissioners jurisdiction, their decision has no evidential force. It is corum non judice. Hence, the burden was on the county to charge the plaintiff by showing the amount of the actual benefits to its roadway. If there is no evidence to show the benefits, then the case should be remanded for further evidence.