# A. H. BARNES et al., Appellants, v. CASS COUNTY et al., Respondents.

(228 N. W. 839.)

Opinion filed December 24, 1929.   Rehearing denied February 10, 1930.

136

*Melvin A. Hildreth,* for appellants.

*Burdick & Shaft, John C. Pollock,* and *James W. Pollock,* for respondents.

BURR, J. The purpose of this action, as stated by the plaintiffs on this appeal, is "to set aside a special assessment on lands owned and controlled by the plaintiffs and others;" and it is urged the court erred in its decision and in not granting a new trial.

The amended complaint is too lengthy to be set forth in full. The charge, however, is that some time in 1918 "a pretended petition was presented" to the drainage board of Cass county "in which many of the subscribers to said petition were never consulted and their names were fraudulently inserted upon said petition so presented," praying for a drain to be constructed in Cass county through the townships of Barnes and Reed and that the drainage board employed defendant S. F. Crabbe consulting engineer, and proceeded to construct said drain without giving "the taxpayers and owners of the lands in said townships, including these plaintiffs, a proper and legal notice and without ever having acquired jurisdiction over the subject-matter." The complaint then alleges the construction of the drain and that during the period of construction the drainage board fraudulently issued and delivered to the contractor warrants for amounts that had never been audited, and increased the amounts "by means of false and fictitious and sham accounts and claims; that they made contracts for the construction of bridges and culverts without having advertised for bids and all for the purpose of compelling the plaintiffs to pay exorbitant, illegal and excessive sums," and that all in all warrants to the amount of $76,368.73 were issued of which amount $32,964.76 consisted of "false and fictitious claims," and that by fraudulent issue of warrants for rights of way and by other means fraudulently issued warrants "to divers persons in the sum of $13,580 for the pretended construction of said drain as aforesaid, and with the intent to cheat and defraud these plaintiffs, and to compel them to pay for pretended benefits by false and fraudulent vouchers and warrants as aforesaid, the sum of $108,-

923.82." The complaint then alleges, upon information and belief, that assessments for benefits were fraudulently excessive and were by the defendants, the drainage board, set upon the public records with the intent to defraud the plaintiffs. That all this was well known to the drainage board and the consulting engineer, and that certain lands held by the plaintiffs were "grossly, fraudulently and excessively assessed for such drain without any reference to the specific benefits arising therefrom." There follows a statement of the amounts of benefits and assessments. After making allegations regarding certain lands, setting forth alleged excessive assessments, complaint alleges that some of the plaintiffs had no notice of the assessments or the amount of benefits said to be appurtenant to the land and that the drainage board and the consulting engineer did not keep the records as required by law, but fraudulently and wilfully destroyed and concealed them and prevented the plaintiffs from ascertaining the true facts. The complaint then asks that the court make readjustment and such reassessment as is proper and just, and compel the defendants to produce the records for examination. This drain is known as the Canfield drain No. 40.

The county of Cass, the drain commissioners, Henry Larson and August Plath personally as two of the former commissioners, S. F. Crabbe, the county auditor, and the county treasurer join in an answer, alleging facts showing jurisdiction in the drain commissioners, that all the records are now and always have been properly kept as required by law, that there was neither fraud nor discrimination nor partiality shown, and "that the cause of action, if any, alleged and set forth in plaintiffs' complaint, did not accrue within six years before the commencement of this action, and is, therefore, barred." The defendant Brown answers to the same effect.

The plaintiffs reply alleging that during the years 1919 and 1920 inclusive and up to the time of the commencement of the action defendants had deliberately prevented the plaintiffs by "deceit, fraudulent conduct, etc." from having access to the records and that it was not until the year 1926 the plaintiffs became aware of the fraudulent acts of the defendants, and it was not until just before the commencement of the action plaintiffs "were able to discover evidence of the fraudulent

actions and conduct of these defendants," and "that the several acts of fraud set forth and alleged in plaintiffs' amended complaint were not discovered by the said plaintiffs until the past two years next preceding the commencement of this action."

The record shows that the contract for the construction of the drain was entered into on or about June 18, 1919 and that the drain was to be completed on or before July 1, 1920. The record further shows the assessments of benefits were made more than eight years prior to the commencement of the action, the summons being served from time to time between October 4th and October 10th, 1927.

Under the provisions of the statute, § 2462, drain commissioners are appointed and "hold office for two years and until their successors are appointed and qualified." The record is silent as to whether the commissioners were reappointed or successors ever appointed. However the argument before this court takes it for granted that these defendants, Larson, Plath and Brown, are no longer drain commissioners and had not been such for many years, and this does not appear to be denied, although the reply brief filed after argument, states they are the drain commissioners now. The answer alleges they entered on the discharge of their duties Nov. 15, 1918 "and are not now and have not for eight years last past been acting or qualified as drain commissioners." However as the answer is dated in 1927 it is not a strictly accurate statement. The record is voluminous and the exhibits in the case numerous; but certain undisputed facts stand out prominently obviating the necessity for and preventing the judicial review of much of the complaint of the plaintiffs.

The matter of drains, their construction and method of assessments for the payment thereof is set forth in chapter 37 of the Political Code of this state (Comp. Laws 1913) being §§ 2461 to 2495, inclusive. This was the law in force at the time this drain was established, with the exception of chapter 123 of the Session Laws of 1915 which amends § 2465; chapter 65 of the Session Laws of 1917 which amends section 2482; and chapter 113 of the Session Laws of 1919 which amends § 2478. None of these amendments however affects the issues here.

The history of drainage legislation for this state dates from chapter 75 of the Session Laws of 1883, in territorial days. This statute, with

several minor amendments by the legislature of 1885, is incorporated in the Code of 1887,—chapter 20 of the Political Code—being §§ 2047 to 2078 of that Code. The board of county commissioners, or the board of supervisors of an organized township, was the drainage board for each of these political subdivisions respectively. This law made specific provision for appeal upon the following grounds: "Whether said ditch will be conducive to public health, convenience or welfare; whether the route thereof is practicable; whether the assessments made for the construction of the ditch are in proportion to the benefits to be derived therefrom; the amount of damages allowed to any one person or persons or corporations." § 2063 of 1887 Code. It also provides: "Any person or corporation aggrieved thereby may appeal, etc." but it does not say to whom the appeal is taken. All through the statute, however, it is clearly the intent that the appeal should be taken to the district court, for the following section says:

"If more than one party appeal, the judge of the district court shall order the cases to be consolidated and tried together, and the rights of each party shall be separately determined by the jury in its verdict." However the general law in force .at that time (§ 610 of the Code of 1887) allowed an appeal to the district court "from all decisions of the board of commissioners upon matters properly before them" being similar to § 3298 of our present Code.

Shortly after admission to statehood some radical changes were made in drainage legislation. The whole statute was recast. Thus it may be said the history of drainage legislation for this state begins with chapter 21 of the Political Code of 1895, being §§ 1444 to 1474 inclusive of said Code, or chapter 51 of the Session Laws of 1895. This law provided for drain commissioners appointed by the county commissioners and said that when the petition for the construction of a drain is filed the board of drain commissioners must examine the line of the proposed drain, etc., and (§ 1448) "if upon such examination and survey or upon the trial in the district court it shall appear that there was not sufficient cause for making such petition or that the proposed drain would cost more than the amount of the benefit to be derived therefrom, the board of drain commissioners shall deny petition, etc." evidently having the old provision in mind. This provision quoted

is carried forward in the Code of 1899, § 1448; is set forth in § 1822 of the Code of 1905; is contained in chapter 93 of the Session Laws of 1907, and is incorporated in § 2465 of the law in force at the time this drain was being constructed.

Section 1450 of the Code of 1895, being § 7 of the chapter 51 of the Session Laws of that year, provides:

"Upon the assessment by the jury, court or referee of the amount of damages to which the respective owners of the right of way to be used for the construction of any proposed drain are entitled, the board of drain commissioners shall assess the per cent. of the cost of acquiring right of way . . . make a return to the county auditor, . . . and make, serve and file the list, etc."

There is no special provision in this chapter, or in chapter 51 of the Session Laws of 1895, providing specifically how appeal to the district court shall be taken, but this provision for assessment of the damages by the jury is carried forward in § 1450 of the Code of 1899; is set forth in § 1824 of the Code of 1905; and is not in any way amended by chapter 93 of the Session Laws of 1907. We find the same provisions in § 2467 of the Compiled Laws of 1913, in chapter 37 of the Political Code.

Chapter 37 of the Political Code is somewhat indefinite as to the method of appeal to the district court. It is clear it contemplated that all jurisdictional matters may be reviewed by the district court in some manner for § 2465 says:

"If . . . upon the trial in the district court it shall appear that there was not sufficient cause for making such petition, or that the proposed drain would cost more than the amount of benefit to be derived therefrom, the board of drain commissioners shall deny the petition, and the petitioners shall be jointly and severally liable to such board for all costs and expenses incurred in the proceedings, to be recovered by such board by action."

Apparently it was the intent to give all parties interested a right to a judicial review of the determination by the drainage board as to its jurisdiction; whether by appeal or on the theory that the review would be by certiorari, under the provisions of §§ 8445 to 8456 inclusive of the Compiled Laws of 1913.

A review of assessments of benefits by appeal to the state engineer is provided for by § 2468 upon petition of "two thirds of the land owners subject to assessment for the construction of the proposed ditch," when they "believe that the assessment had not been fairly or equitably made, or that the drain was not properly located or designed," thus subdividing reviews heretofore established.

It is clear therefore that it was the supposition of the legislature that the individual land owner had a right of review in the district court, not only with reference to jurisdictional questions but also as to the amount of the assessments and damages, overlooking the creation of a new board, and the subdividing of cause resulting in giving a right of appeal to the state engineer. The manner of review provided for in South Dakota is much more specific. There the board of county commissioners is the board of drain commissioners and specific provision is made for an appeal to the circuit court. The statute in South Dakota is practically the old 1887 Code already mentioned, so far as appeal is concerned. However our statute contemplating review of some kind, whenever that review is permissible, the rule laid down in the case of Smith v. Pence, 33 S. D. 516, 146 N. W. 709, that "parties who did not appeal cannot question the validity of assessments in a suit to enjoin the completion of the drain, and the spreading of an assessment" is applicable to plaintiffs here.

Legislation in the different states differs as to the method of review of assessment of costs, apportionment of benefits, etc.; but whatever is the method provided—where there is a method provided—the person aggrieved must follow that method. If he fail to do so, and permit the assessments to stand, the decision of the board becomes final the same as the decision of any other board or tribunal. See State v. Risty, 51 S. D. 336, 213 N. W. 952.

The records show a proper petition was filed with the drain commissioners June 21, 1918, the route was examined, an order establishing the drain made November 18, 1918 and notice was issued according to law. Therefore the drain commissioners had jurisdiction of the subject-matter, and the board was legally in position to proceed with the construction of the drain. In the determination of this case this is an important factor.

While the complaint is full of charges of fraud and deceit the specific causes of fraud sought to be established are few, and on the argument the instances alleged where owners of lands did not receive proper notice of assessment of benefits dwindled to one.

The majority of the witnesses in this case are the officials, but five witnesses attempt to testify as to unjust assessments—that is, that assessments on some lands were higher proportionately than abutting lands having as many or greater benefits. To do this they testify as to the slope of the land, etc. Some testify that no water ever ran in the ditch, thus attempting to show its uselessness. The remaining witnesses testify to the difficulty of getting records, issuance and payment of two warrants in question and the manner of conducting the proceedings. Exhibits introduced by plaintiffs themselves show regular payments of the levies, year after year, with no protest, or inquiry as to the purpose of these levies.

Plaintiff M. A. Hildreth testifies positively that he did not receive notice and that the purported signature attached to the registry receipt as his is in fact a forgery. There is dispute in the record as to this feature. The trial court considered the testimony on this point carefully and came to the conclusion that Mr. Hildreth was mistaken; that he had forgotten the receipt of this registry notice; had forgotten that he had signed it; and that in fact notice had been received by him. The record shows Mr. Hildreth paid the assessment levied for 1921–1924 inclusive amounting to $1,252.73 (plff's ex. 215) with no protest from him. He was informed of this by a letter from the County Auditor, under date of April 13, 1925. The evidence as to receipt of notice is conflicting and debatable but the finding that Mr. Hildreth did receive notice has plenty of testimony to support it and will not be disturbed by this court.

The record showing the board had jurisdiction of the subject matter, it is clear that such board, in exercising the powers granted by the statute, "is exercising functions in their nature judicial when it assesses the benefits to land in the drainage district established by it." After it has assessed the benefits, if it has proceeded in all things in accordance to the statute, "its action in assessing benefits is final unless assailed for fraud or other ground for equitable interference." See State

ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191. This rule was reaffirmed in a somewhat later case, Alstad v. Sim, 15 N. D. 629, 109 N. W. 66. Here the court said:

"A court of equity will not, after the drain is completed, enjoin the collection of assessments against lands benefited by a drain regularly established by legal authority, although the board proceeded irregularly in matters pertaining to the construction of the drain. . . .

"The determination of the board of drain commissioners that lands are benefited by a drain is conclusive, except in case of fraud."

This court has consistently held that where jurisdiction has been conferred upon the board parties cannot be heard to assert invalidity of special assessments in the absence of fraud and the courts do not inquire into the correctness of the judgment of the board as to alleged benefits in the absence of fraud or the manifest abuse of discretion. See Freeman v. Trimble, 21 N. D. 1, 129 N. W. 83; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841. This is applicable even if plaintiff be not a petitioner for the drain, and his lands are affected thereby. Hackney v. Elliott, 23 N. D. 373, 137 N. W. 443.

This rule has special force when the parties stand by and see the work going on, but make no protest until long after the work is completed. Such parties know the work cannot be done without the contractor being paid for it, and that the only way in which he can be paid is by assessment of the lands. For this reason, in the absence of manifest fraud, equity will not interfere after the work is done, when the drainage board had jurisdiction of the subject-matter and parties were duly notified. See Hackney v. Elliott, supra, and Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841, supra. This rule has almost universal application. That equity will not interfere where the parties observe the work being done and made no protest is sustained by abundant authorities. See Atwell v. Barnes, 109 Mich. 10, 66 N. W. 583, affirmed in Auditor Gen. v. Longyear, 110 Mich. 223, 68 N. W. 130, and numerous other Michigan cases. Thompson v. Mitchell, 133 Iowa, 527, 110 N. W. 902; State v. Johnson, 111 Minn. 255, 126 N. W. 1075; Geib v. Morrison County, 119 Minn. 261, 9 A.L.R. 839, 138 N. W. 24; DeNoma v. Murphy, 28 S. D. 372, 133 N. W. 703; Hemenway v. Craney, 36 Idaho, 11, 208 Pac. 407; Bartlesville v. Holm, 40

Okla. 467, 9 A.L.R. 627, 139 Pac. 273 (dealing with city paving) and note to 9 A.L.R. 842.

In Edwards v. Cass County, 23 N. D. 555, 137 N. W. 580, the court had under consideration an action brought to restrain the construction of a drain and the further proceedings. We held that the filing of a sufficient petition for a drain vests the drainage board with jurisdiction to proceed, that substantial compliance thereafter with the requirements of the statute is sufficient, that the judgment of the board in assessing benefits will not be reviewed because of mere error in judgment; and that in the absence of fraud the determination of the board is conclusive. As said in Bergen Twp. v. Nelson County, 33 N. D. 247, 156 N. W. 559, "the board of drain commissioners is the tribunal created by the legislature to determine, upon petition and pursuant to notice, whether the public good requires a proposed drain to be constructed, and whether the cost of construction will exceed the amount of benefits to be derived therefrom; and also to determine what lands are benefited by the construction of the drain, and to apportion the cost thereof according to benefits. . . . When the board of drain commissioners have, in all things, proceeded in accordance with the statutory requirements, their action is final, and the courts will not inquire into the correctness of their determination upon questions within their jurisdiction, unless such determination is assailed for fraud, or other ground for equitable interference." In the case at bar there was such a petition with requisite number of owners of land, there was an order by the board establishing the drain after a hearing had been given to all concerned, notice of assessments was given, there was no application to the courts, therefore the determination of the board of drain commissioners is conclusive, except in case of fraud.

This drain was completed over six years ago. The testimony shows the last meeting of commissioners on this drain was held in January 1925 but this was for the purpose of making a supplementary assessment. The last previous meeting was in 1923. Therefore "a court of equity will not after the drain is completed enjoin the collection of assessment against land benefited by a drain regularly established by regular authority, because of some irregularities in some of the proceedings." Alstad v. Sim, 15 N. D. 629, 109 N. W. 66, supra.

So far as the record goes no assessments were paid under protest. All payments were voluntary until about the time of the commencement of the action and apparently everyone acquiesced in the proceedings for several years. This action on the part of the plaintiffs estops them from questioning "the right of the commissioners to establish and maintain a ditch where the plaintiffs have in some of these proceedings paid the assessments without objection." See Mason v. Fulton County, 10 Ohio C. C. N. S. 201, 20 Ohio C. C. 49. This rule is well established. The assessment is presumed to be correct and equitable. Payment of these assessments is acquiescence by the land owners. Hence all the irregularities in the proceedings are waived, and if no fraud be shown plaintiffs cannot now be heard to complain. See Collins v. Pottawattamie County, 158 Iowa, 322, 138 N. W. 1095. See also Northern P. R. Co. v. Sargent Co. 43 N. D. 156, 174 N. W. 811.

The history of drainage in this state is illuminating—not because of fraud or graft but because of misconception as to the value of drainage installation so far as agricultural lands are concerned. In many instances the assumed benefits never materialized. This, however, is not fraud. Miscalculation or erroneous judgment is not involved. When the statute speaks of benefits it means benefits calculated at the time of the construction of the drain and the fact that subsequently the drain may prove to be of little or no value does not warrant the setting aside of the assessments. The fraud necessary to be proved in this case must be fraud in the inception of the proceedings or fraud in the apportionment of costs and the assessment of the benefits.

This brings us to the determination of the two principal questions —has fraud been shown and, has the action been commenced within the proper time?

If the case be not commenced in time the proceedings are ended, but owing to the nature of the complaint, the denunciation of the officials and the frequent and extravagant allegations of fraud we deem it wise to pass upon the evidence presented.

It is commonplace that fraud is not presumed. It must be proved. The complaint contains numerous allegations of fraud and appellants, in their brief, discuss the effect of fraud; but there are no specific

charges of fraud in the main except three, namely: the destruction, secretion, or failure to keep the records of all of the proceedings relative to the drain in question; second, unjust, discriminatory, fraudulent assessments of costs against the various lands; and third, misappropriation of the funds—the specific charge being that two warrants for $500 each were issued for the same item of expense and that the proceeds of one of these warrants were retained by one of the officials, not a drain commissioner however. Much is said in regard to the fees and per diem received by each commissioner, and salaries and expenses paid various employees evidently for the purpose of showing duplication of fees and costs. The record shows that during the time the Canfield drain was under construction several other drains were being dug, specifically drains No. 21–A, 37, 39 and 41,—a portion of the time at least—and the claim is made that fees, salaries, and costs were pyramided. Suspicion is injected, but the record does not show substantiation,—in fact there is no evidence whatsoever to bolster up the suspicion.

The presumption is "that official duty has been regularly performed." See § 7936 subd. 15. The record shows that this drain in question was completed many years ago; that for years there has been no drainage work in Cass county; that when counsel for the plaintiffs undertook an examination of the records dealing with this particular drain and other drains in process of construction at the time, he found great quantities of records stored in a room in the courthouse. The record shows that when the drains were completed the records were left in the courthouse. No one examined them for years and when it became necessary to look up the proceedings the piles and heaps of records were gone over. From time to time papers, reports and such like records were found and delivered. It seems that the minute book dealing with the Canfield drain could not be found nor the stubs of the warrant book. Assuming this to be true it falls far short of showing that such books never existed or that they have been destroyed, or secreted for the purpose of preventing appellants from examining them. It must be remembered that the term of office of the drain commissioners made parties in this case ceased some years ago. We do not know they have been

drain commissioners since; they are not the custodians of the records; nor was the engineer, whom they appointed to look after the drain in question, the custodian of the records. The uncontradicted testimony shows the records were deposited in the courthouse. When this was done and the term of office of the drainage commissioners expired their duties with reference to the custody ceased. There is no fraud whatever shown with reference to the secretion, or destruction of records.

The second point deals with the appraisal of costs and the assessment of benefits. As we have pointed out before the decision of the commissioners on this point is final in the absence of the appeal provided for in the statute, §§ 2467 and 2468 of the Compiled Laws 1913 were the statutes dealing with assessment of costs and benefits under which the drainage board was acting at the time of the construction of the drain. This law requires the drain commissioners to assess the benefits, and to give ten days' notice of the time and place where such assessment will be reviewed. The record shows that the assessments were made and the ten days' notice given as required by statute. It is true, as pointed out heretofore, one of the parties affected claimed no notice was given, that his name was forged; but this point was determined against him as hereinbefore described. There was no objection taken at the time of the assessment of damages or benefits. The statutes quoted provide that when the drain commissioners meet to review the assessment they shall hear the complaints if any and correct the assessments. It also provides that—"if two thirds of the landowners, subject to assessment for the construction of the proposed ditch, believe that the assessment had not been fairly or equitably made, or that the drain is not properly located or designed, they may appeal to the state engineer by petition to make a review of such benefits and assessments and to examine the location and design of the proposed drain."

No such appeal was taken. It will be noted that the officer required by statute to review the proceedings of the drain commissioners is not the engineer in charge of the construction. This officer is an independent official, wholly removed from the Board. No claim was made at that time of any unjust and partial assessments. The parties cannot

raise this point now. That the drain did not fulfill expectations, and in the light of subsequent experience may be shown to have been an unnecessary expense, is beside the point.

The third point deals with the issuance of two warrants for $500 each—exhibits 60 and 61. Keeping in mind the time when the contract was let and that the contract provided the drain should be completed on or about the first day of July 1920, we will briefly refer to these two exhibits. On August 2, 1920, upon the written estimate of S. F. Crabbe, the engineer in charge, warrant No. 4578 for $500 was issued to one E. O. Chase in payment of a right of way for the Canfield drain No. 40. This warrant was presented for payment, not paid for want of funds, and was registered. It bears the endorsement of E. O. Chase with certain unintelligible letters following, apparently "oa." There is no question in the record but what Mr. Chase received this warrant for right of way. On December 1, 1920 another warrant for $500, warrant No. 4670, was issued to one E. O. Chase upon an estimate given by S. F. Crabbe. This warrant, by the record made at the time as shown on stubs, etc., was for right of way; and in the warrant it is so stated; but this stub record was afterwards changed. This warrant bears the endorsement of E. O. Chase in a handwriting entirely different from the "E. O. Chase" on the first warrant. Also, it bears the endorsement of one D. L. Rand. The testimony of Mr. Crabbe shows that this warrant was in fact issued to an entirely different E. O. Chase for work in cleaning out the ditch; one known as Earl O. Chase; that owing to the similarity of the initials in the names, and the recollection of right of way, he inadvertently stated it was for right of way and did not change it until some time later. We have searched the record for the Christian name of the other E. O. Chase—the one who sold the right of way—but do not find it. The parties apparently overlooked bringing it out; but in the argument before this court it was admitted his Christian name is Edwin. This second warrant found its way into the hands of D. L. Rand and it is the explanation of Mr. Crabbe that Chase was an itinerant contractor from Minnesota, hired to clean out some slides in the drain; that this Chase wanted cash and that from time to time Rand had inquired whether any of these warrants were for sale by the holders and that Crabbe either sold it to Rand

for Chase or directed Chase to Rand as a possible purchaser. The estimate on which this warrant was issued is "Plff's Ex. 167" reading:

"Fargo, N. Dak.,
Dec. 1, 1920

"Drain No. 40,
"Earl O. Chase
"Estimate No. 1
"Excavation
      "To team work and labor removing sliding bank $500.00
                     . "Respectfully submitted
"Warrant No. 4670         "Sam F. Crabbe, Engineer."

There is a charge that all these "estimates" filed as exhibits are pure concoctions; made after the time of the commencement of the action to afford a basis for the engineer's explanation. There is no evidence to this effect—the evidence is wholly against it, except the whiteness of the paper after a lapse of years, the fact Crabbe did not deliver them to agents for the plaintiffs when search was made, and they were produced by Crabbe himself.

It is strongly urged by the plaintiffs that this whole matter is fraudulent, and that Crabbe reaped the benefit of this $500 transaction. It will be recalled that Crabbe was not one of the drain commissioners. It is true the warrant is signed by the chairman of the board, Henry Larson. But the record shows he did this upon the estimate and under the direction of the engineer in charge. There is no intimation that the drain commissioners were in any way participants in any alleged fraud, or that they had knowledge of such. The contract required payments to be made upon the estimates furnished; the engineer was in charge; and the commissioners took his estimates in this case the same as they did in others. There is nothing whatever to indicate the commissioners guilty of fraud or embezzlement or misappropriation of funds. In addition to this, the transaction was long after the contract was let and after the time set for its completion. The trial court, in its memorandum opinion deals with the record and explanation given for the issuance of this warrant. In the first memorandum filed, the court said:

"The *explanation was made by Mr. Crabbe that this was paid to another party of the same name for another piece of work, that is to say the check for $500 which was challenged.* The plaintiffs produced no other proof that would be sufficient, coupled with other evidence, to say that the second $500 was a fraudulent payment, and the Court cannot so say, unless the proof established the fact by clear, satisfactory and convincing evidence."

The matter came before the trial court again on a motion for new trial, and this feature was most strenuously presented. In a second memorandum opinion the court said:

"The principal basis or claim for reopening the case is the $500 payment, a voucher for certain claimed leveling along the drain or ditch. While the voucher and the payment thereof is such as under the evidence does not leave a clear and absolutely satisfactory conclusion to the court as to its genuineness or its falsity, yet even though it would consider that said $500 voucher is a fraud and never was issued for leveling, and was $500 that was pocketed by Crabbe, if such is the case, and such be considered, yet there is no evidence to indicate that such was done, if it was done at all, by the connivance, consent or fault of the members of the Drainage Board. This court is not conceding that such voucher for $500 is a false and fraudulent one, although it may be open to some doubt as to its character but as noted before even though it were absolutely false and fraudulent and was issued without any consideration and Crabbe got the money without any consideration, it would not alter or change the net result of the trial heretofore had, nor be a sufficient basis for reopening the case and granting a new trial."

This is a correct view and a correct statement of the record.

Appellants argue the court erred in not granting a new trial. The motion for a new trial is based on the allegation of newly discovered evidence, dealing with the explanation given by S. F. Crabbe as to the issuance of warrant No. 4670 to E. O. Chase, and is supported by three affidavits. One Hanson, swears he had the entire contract for leveling off drain No. 40 during the season of 1920 and that he did all of the leveling off; "that he knows as a positive fact that there never was a cave-in of any of the bank along that drain;" that he worked practically all of the summer of 1920 and again in the spring of 1921 and "if any

person had done any extra work on that drain" he would have known it. One Gustafson swears he was perfectly familiar with the drain during the time stated and worked on it and that "about 40 rods north from the Canfield buildings was a cave-in, but no man by the name of E. O. Chase or D. L. Rand was ever out there to clean up that cave-in, or any other cave-in on the line of said ditch," "that no man with a team at any time did any work on that drain from the north end to Front street in straightening out any cave-ins," and "that it would have been impossible for any man with a team and scraper" to do so. With these two affidavits is the affidavit of Mr. Hildreth to the effect that he did not know of this testimony at the time of the trial and could not have secured it. It will be noted that Hanson swears positively there never was a cave-in and Gustafson swears there was, but that it was not cleaned out by E. O. Chase. In opposition thereto there is the affidavit of S. F. Crabbe who states that Hanson had a contract with the contractors to level the banks of drain and was paid by them and was not paid by the drain commissioners, and that "some of the cave-ins occurred repeatedly in the same location of the ditch and some at other points at intervals extending over several months." He then says that "all of said work on cave-ins was done with teams in the very deepest part of the drain, no matter how high the bank, for the reason that runways were extended to the drain and the dirt removed through the same." The court denied the motion for a new trial. There was no error in this because as we have shown it refers entirely to the issuance of this $500 warrant. While the affidavits may throw suspicion upon the genuineness of the claim, nevertheless the estimate furnished was not an act of the drain commissioners. They were not responsible for it, and even if negligent in approving the estimate it does not in any way show they were guilty of fraud, deceit, or in any way actuated by bad intent.

The respondents challenge the complaint on the ground that there is no cause of action for fraud stated in the complaint; that fraud is mentioned frequently, but the complaint has no sufficient allegations to sustain a cause of action.

"Where a party seeks the aid of equity in relieving against a judgment or determination of a court or tribunal on the ground of fraud, it

is not sufficient to incorporate in the complaint a general allegation of fraud, but the specific facts constituting the alleged fraud must be set forth." Bergen Twp. v. Nelson County, 33 N. D. 247, 156 N. W. 559. As pointed out in this case "errors of judgment do not constitute fraud, nor do they constitute grounds for equitable relief." See also Erickson v. Cass County, 11 N. D. 494, 507, 92 N. W. 841. Omitting the consideration of this feature it clearly appears from the record there is no proof of fraud on the part of the drain commissioners so as to set aside the proceedings, being the record point raised by respondents.

The last point raised by respondents is that the action was commenced long after the time permitted by statute. This action was not commenced until 1927 and the contract was let in 1919; the assessments on damages and benefits made in February 1919 and no appeal was ever taken.

An action for relief on the ground of fraud must be commenced within six years but "the cause of action in such cases (is) not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." See § 7375, subd. 6. The plaintiffs say they knew nothing about fraud until recently and that they moved promptly upon discovery of acts which would prove fraud. As this court has pointed out the words "discovery" and "knowledge" are not convertible terms. "If there be notice of facts, or if there be information that puts plaintiff on inquiry that would have led to knowledge, there is a 'discovery' within the meaning of the statute, and the plaintiff must be charged with knowledge or notice of everything to which such inquiry might have led." See Roether v. National U. F. Ins. Co. 51 N. D. 634, 200 N. W. 818 and authorities cited. Appellants say they were fraudulently prevented from examining the record, and therefore "knowledge" dates from the examination. We hold no proof of such fraudulent withholding of the records is presented and as all the parties interested knew of the construction of the drain, received the notice, had full opportunity to examine the record, they could readily have ascertained that two warrants for $500 were issued to E. O. Chase. They could have found out whether these were issued for one and the same claim or whether there were two persons of the same name, each having a claim against the drain. The warrant book,

the bond register, the apportionment of cost sheets, etc., were all there in the courthouse. They knew the amount of assessments against their lands, as spread on the tax books, they paid annual assessments for successive years. As said in Roether v. National U. F. Ins. Co. supra (at page 641):

"A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case, a man's failure to note facts of this character should be imputed to him for knowledge; and, in the absence of any active or continued effort to conceal a fraud or mistake or some essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action will be deemed to have accrued from the time when the fraud or mistake was known, or should have been discovered in the exercise of ordinary diligence."

It is the contention of some of the respondents that this § 7375, subd. 6, is not applicable to the case at bar, but that the plaintiffs are foreclosed of every right to commence this action by the provisions of §§ 2467 and 2468 limiting them to an appeal to the state engineer as heretofore, quoted. We do not so hold, when we consider the nature of this action. But in any event the action was not commenced in time as the disputed warrants were issued more than six years prior to the commencement of this action. Thus the defense of the Statute of Limitations is available to the respondents. No reversible error being shown the judgment is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.